CASE 34—ACTION BY HARRY C. SPINKS AGAINST THE UNION CENTRAL LIFE INSURANCE COMPANY ON A POLICY ON THE LIFE OF CHARLES SPINKS, DECEASED.—DEC. 9.

# Union Central Life Ins. Co. v. Spinks.

APPEAL FROM CAMPBELL CIRCUIT COURT—JOHN T. HODGE, CIRCUIT JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

LIFE INSURANCE—FAILURE TO PAY PREMIUM NOTE—WAIVER—ACTION ON POLICY—PROVISIONS OF LIMITATION—VALIDITY—PUBLIC POLICY—DEDUCTION OF PREMIUM NOTE.

1. A life policy provided that premium notes should be paid on or before maturity, and that a violation of any condition of the policy should render it void. Insured in December, 1897, gave a six months' note for the premium on his policy for the ensuing year, and defaulted in payment of the same in June, 1898. After such default, and a notice of cancellation of the policy therefor, the insurer attempted to enforce the note. The insured died in September, 1898. HELD, that the enforcement of such note was a waiver by the insured of the condition of forfeiture.

2. A provision in a life policy to the effect that no suit shall be maintained thereon, unless begun within one year from the death of insured, is void, as in contravention of public policy; the statute prescribing a period of fifteen years for actions on such contracts.

3. Where a life insurance policy provided that any debt of assured to the company should be deducted from the face of the policy if it became a claim against the company, insurer was

entitled to credit on the amount payable thereunder for an unpaid premium note outstanding at the time of insured's death.

ROBERT RAMSEY AND W. W. HELM, ATTORNEYS FOR APPELLANT.

## POINTS AND AUTHORITIES.

1. The insurance terminated without action on the part of the company upon Spinks' failure to pay his note at maturity. Insurance Co. v. Duvall, 46 S. W., 518; Insurance Co. v. Moreland, 46 S. W., 516; Crutchfield v. Insurance Co., 67 S. W., 67.

2. The agent's attempt to collect after maturity was not effective to reinstate the lapsed policy for want of authority on his part. Ins. Co. v. Hayden's Admr., 90 Ky., 30.

3. But if the second point is not well taken, nevertheless the policy terminated when the company formally cancelled it and notified the insured.

4. The defendant is not estopped by the retention of the premium note. Deppen v. Ins. Co., 8 R., 57.

5. The one-year limitation clause in the policy was valid. Lee v. Union Central Life Ins. Co., 56 S. W., 724; Owen v. Ins. Co., 87 Ky., 571; Fund Co. v. Turner, 89 Ky., 665; Riddlesbarger v. Ins. Co., 7 Wall, 386; May on Insurance, 478; 1 Wood on Limitation, 42.

L. J. CRAWFORD AND HAZELRIGG & CHENAULT, ATTORNEYS FOR APPELLEE.

## PROPOSITIONS ADVANCED AND AUTHORITIES CITED.

1. There can be no forfeiture for nonpayment of a note of a third party. Galvin, &c. v. Union Central Life Ins. Co., 24 R., 2452.

2. Terms of note such that reciprocity of contracts prevents forfeiture, and the attempt to collect note prevented forfeiture. Moreland v. Union Central Life Ins. Co., 20 R., 432; Union Central Life Ins. Co. v. Duvall, 20 R., 441; Walls v. Home Ins. Co. of N. Y., 24 R., 1452, at pages 1454-5.

3. Forfeitures odious to the law. National Mutual Benefit Assn. v. Jones, &c., 84 Ky., 110, at page 117; Ph. Ins. Co. v. Spiers & Thomas, 87 Ky., 285, at page 294; Mutual Benefit Life Ins. Co. of Newark, N. J., v. First Nat. Bank of Louisville, 24 R., 580, at page 583.

4. Provision that waiver of policy must be in writing applies to a waiver by express agreement, and not to a waiver by operation of law.

Union Central Life Ins. Co. v. Spinks.

5. The provision that suit must be brought within one year from death of·the insured is against public policy in Kentucky. Sec. 59, subsec. 5, of the Constitution of Kentucky, and the following analogous cases: Montgomery v. Ph. Life Ins. Co., 14 Bush, 51; Washington Life Ins. Co. v. Miles, 66 S. W., 74; Mutual Life Ins. Co. v. Jarboe, 102 Ky., 80; Manhattan Life Ins. Co. v. Patterson, 60 S. W., 383; City of Louisville v. Kuntz, 20 L. R., 805; City of Louisville v. Seibert, 51 S. W., 310; Simpson v. Ky. Bldg. Assn., 19 R., 1176; W. U. Tel. Co. v. Eubank, 10 Ky., 604; Gorley v. City of Louisville, 20 R., 602; Wright v. Gardner, 98 Ky., 454; Moxley v. Ragan, 10 Bush, 159; Allen v. Forhman, 96 Ky., 317; Thomasson v. Townsend, 10 Bush, 114; Davis v. W. U. Tel. Co., 21 L. R., 1251; Smith v. W. U. Tel. Co., 83 Ky., 104; Ins. Co. v. Cook, 41 S. W., 279; Ph. Ins. Co. of Hartford, &c. v. Peak; Orient Ins. Co. v. Daggs, 172 U. S., 557; — L. R. A., 43, 552; Germania v. Rudwig, &c., 80 Ky., 223 (see page 235); L., C. & L. R. R. Co. v. Hedger, 9 Bush, 645; Ohio & M. Ry. Co. v. Tabor, 32 S. W., 168, and same case on rehearing, 36 S. W., 18; Witherspoon v. Musselman, 14 Bush, 214; Davis v. Jones, 94 Ky., 320; Owens v. Datewood, 4 Bibb, 494; Mitchell v. Vance, 5 Mon., 330; Wall v. Equitable Life Assur. Soc., 32 Fed., 273.

6. One year clause inserted solely for the benefit of appellant. Appellant waived it by not refusing to pay. So held as to analogous arbitration clause in case of Continental Ins. Co., &c. v. Vallandingham & Gentry, 25 R., 469.

7. Claim on policy not barred, unless note is barred. Talbot v. Todd, 5 Dana, 190; Headley's Exr. v. Jenkins, 13 L. R., 463; Myers v. Patterson, 14 R., 143.

### ADDITIONAL CITATIONS BY APPELLEE.

Limitation question: Constitution, sec. 59, subsec..5; Wright v. Gardner, 98 Ky., 454; Moxley v. Ragan, 10 Bush, 159; Allen v. Froman, 96 Ky., 317; Bishop on Contracts, secs. 439-442.

Distinguished and discussed: Lee v. Union Central, &c., 22 R., 1712; Smith v. Herd, 22 R., 1603; O'Bannon v. Louisville & Cincinnati R. R., 8 Bush, 352; L. & N. R. R. v. Williams, 103 Ky., 298; Pratt v. Breckenridge, 23 R., 1864.

Forfeiture question: Moreland v. Union Central, &c., 20 R., 432; Union Central, &c. v. Duvall, 20 R., 441; 2 Joyce on Insurance, 1372.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This suit·was upon a ten-year term life policy, issued by

appellant upon the life of Charles Spinks for $10,000. The policy was issued February 1, 1894. The annual premium was $396.80. The policy contained the following provisions:

"All premiums or notes, or interest upon notes, given the company for premiums, shall be paid on or before the days upon which they become due." etc.

"Upon the violation of any of the foregoing conditions this policy shall be null and void, without action on the part of the company, or notice to the insured or beneficiary," etc.

"The contract of insurance between the parties hereto is completely set forth in this policy and the application for the same, and none of its terms can be modified, nor any frofeiture under it waived, save by an agreement in writing signed by the president, vice-president, or secretary of the company, whose authority for this purpose shall not be delegated,"

"No suit to recover under this policy shall be brought after one year from the death of the insured."

The insured paid three of the annual premiums, and on December 15, 1897, executed to appellant a six months note for $396.80 for annual premium due on that date. The note was not paid at maturity. On the day following the maturity of the note defendants general agent at Cincinnati wrote the insured as follows:

"Cincinnati, O., June 16, 1898.

"Charles Spinks, Esq., Newport, Ky.—Dear Sir: Your note of $396.80 ($11.90 interest) on policy 114,386 was due and unpaid on the 15th day of June, 1898. Your immediate attention to the above is of the utmost importance to the validity of your policy in the event of sudden misfortune. Please call and arrange to pay the same at once.

"Yours respectfully,

"F. W. Jewell, General Agent.

The insured made no reply to this letter so far as the proof shows.

On June 21st the general agent sent the note to a bank, with the following letter of advice:

"Cincinnati, O., June 21, 1898.

"Newport National Bank, Newport, Ky.—Gentlemen:   I inclose you the note of Charles Spinks for collection.

| | |
|---|---|
| Note ................................... | $396 80 |
| Interest ................................ | 11 90 |
| | $408 70 |

"Yours respectfully,

"E. W. Jewell, General Agent."

The bank, as agent of the insurance company, presented the note to the insured and demanded payment.  But it was not paid.  On July 7th, following, it was returned to appellant.  On that day appellant wrote the insured as follows:

"Cincinnati, O., July 7th, 1898.

"Charles Spinks, Esq., Newport, Ky.—Dear Sir:  The note given in payment of the annual premium on your policy 114,386 was due and unpaid June 15,, and according to the rules of the company you must furnish us a satisfactory certificate of good health before settling this note.  If you will kindly take the indorsed health certificate to the medical directors of the company, they will fill it out and pass upon it.

"Yours respectfully,

"E. W. Jewell, General Agent."

. It is claimed for appellant that it about the same time forwarded to its local agent at Newport, where insured lived, a formal notice canceling the policy for nonpayment of premium; but there is no evidence that it was ever received by the insured.  Omitting, therefore, the last named act

from the proceedings, we have, so far as the insured was advised, that the insurance company held his premium note, was endeavoring and intending to collect it in full, which represented the premium on his policy to December 15th following, and had taken no action looking to a cancellation of the policy. As a matter of fact, it is testified that the company, immediately upon default, when the note was due, marked the policy on its policy register "Canceled." The insured had been in the habit of executing notes to appellant for his premiums, and of paying them some time after maturity. They were always received, so far as this record shows, without question. The insured, however, died on the 14th of September, 1898. This suit is by the beneficiary of the policy, a son of the insured.

It is the well settled law of this State that, if an insurer desires to avail itself of conditions in its policy to declare it forfeited for the nonpayment of a premium note, it must unequivocally elect to so treat it, and in fact then and thereafter so treat it. It will not be allowed, though, to claim both that it is not bound on the policy, but that the insured is bound to pay the note. Its action must be consistent While it may retain the note, as evidence of its nonpayment, it must not retain it or treat it as an evidence of that much indebtedness. Moreland v. Union Central Life Ins. Co., 104 Ky., 129, 20 R., 432, 46 S. W., 516; Union Life Ins. Co. v. Duvall, 46 S. W., 518, 20 Ky. Law Rep., 441; Johnson v. Southern Mut. Life Ins. Co., 79 Ky., 406, 3 R., 26; Walls v. Home Ins. Co., 71 S. W., 650, 24 Ky. Law Rep., 1452. In the case at bar appellant not only retained the note after its maturity, but repeatedly endeavored to collect it in full thereafter. It thereby claimed that the insured owed to it $396.80 as an enforceable debt. If he did, then appellant was bound to him, as the consideration for it,

upon the policy of insurance. Even though such provisions in policies of insurance are automatic, they may be waived by the parties, and this waiver may be indicated by conduct, as well as by express language. The fact that the insured marked on its private books that the policy was canceled, did not cancel it, if thereafter it continued to assert the note as enforceable obligation against the insured, thereby evincing to him that it was not canceled. Upon principle and authority we hold that the evidence here shows a waiver by the insurer of the condition of forfeiture in the policy.

The more important question is that of special limitation of one year provided for by the policy. The suit was not brought till more than one year after the death of the insured. We are aware that this or similar provision is contained in nearly all insurance polices, fire and life. We are further aware that the provision is upheld by many courts, including the United States Supreme Court (Riddlesbarger v. Hartford Ins. Co., 7 Wall., 386, 19 L. Ed., 257), and is approved by text writers. This court has also, though with hesitation and misgiving, followed the other courts in approving it. We therefore have come to the reconsideration of this question with a deep sense of its importance and difficulty, and of our duty in the premises. The legal question is, can parties by contract substitute a period of limitation, binding upon the courts, for the statutes of limitation enacted by the Legislature? If they can, it must be upon some general principle, the breadth and far-reaching effect of which can not logically be limited to mere contracts of insurance, but must incontrovertibly be applicable to all contracts; for, if it is a matter of agreement alone between parties competent to contract, the only inquiry that can ever be made is, have they agreed upon it.

Pleas of limitation were allowed long before there was

any statute on the subject. The courts applied them upon the theory of a fiction to the effect that after so long a lapse of time, during which the claimant made no assertion of his rights, in a personal demand, a presumption was raised that the obligation had been paid or discharged, and in the case of real estate, that a conveyance had been executed but lost. The fiction was justified in the reasoning of the courts by the evident justness of its effect; it being argued that one who had so long neglected his rights as to allow the other party to suffer by it, by the loss of evidence and the like, ought not to be heard to disturb a condition he had suffered to come about. But statutes of limitation have come to be enacted everywhere. They are not mere rules of evidence, presumptions of the payment or extinguishment of the obligation sued upon, but are statutes expressive of a public policy, and are favorably regarded by the law. They are not in operation or suspense at the mere will of the parties, but in spite of them. While the statutes themselves make provision for their suspension, it is to be noted that in every instance it is allowed for the purpose of continuing or prolonging a preexisting right to sue, and never to close the door against suits by any kind of waiver in favor of an obligee.

Many statutory provisions are made for the protection of personal rights, which the parties may avail themselves of or not, in their transactions, as they may please. But where the statute is expressive of the public policy, any contract made in contravention of it is *ipso facto* void. Parties will never be heard to say that they elect to waive the public policy, and are willing to abide by their own substituted policy. The public policy, as the term indicates, is impersonal, and essentially of universal and exclusive application within the territory of the authority declaring

it. There could be no public policy otherwise, and the whole people would be powerless to enforce any wholesome general rule of conduct in business transactions, where any number chose to ignore or violate it. Statutes of limitation belong to this class. They pertain to the administration of justice by the courts of the State—a subject of paramount concern to the whole public. That there may be a period of repose against stale claims is provided, recognizing the old idea that, but for the loss of evidence, death or removal of witnesses, forgetfulness, and so on, an apparent condition might have been explained away. The statute means more than that no suit shall be maintained upon the class of claims treated of by it after the lapse of the time fixed by it. It means, also, that until that time has elapsed the courts are open to hear the claim. The statutes are substituted in lieu of the common law rules of presumptions and practice, and establish the public policy of the State on the subject of limitation of actions. They supersede not only the fictions of the common law, but also supersede the hitherto uncontrolled capacity of parties to themselves limit the time in which either may rightfully appeal to the courts for redress under their contracts. Agreements in advance to waive statutes of limitation altogether are held void on the grounds that such statutes are for the repose, the peace, and the welfare of society. Greenhood on Public Policy, 504; Kellogg v. Dickinson, 147 Mass., 432, 18 N. E., 223, 1 L. R. A., 346; Trask v. Weeks, 81 Me., 325, 17 Atl., 162; Green v. Coos Bay Wagon Road Co. (C. C.) 23 Fed., 67.

It is old and familiar doctrine that the courts will not enforce a contract by which the parties have bound themselves not to sue at all, or to leave the difference exclusively to arbitrators. If parties by contract can lawfully provide

when the suit shall be instituted (or when it shall not be, which is the same thing) why not let them go further within the same principle and stipulate as to the nature of the action; whether it shall be tried by a jury, and what evidence shall be receivable to establish or impeach the right; and, by force of the same logic, why not close the matter consistently by concluding how and out of what estate the execution upon the judgment may be levied, and within what time the judgment of the court may be enforced. If the fact be that by contract one party becomes bound to another, the policy of the law is to regulate in what forums, by what nature of proceedings, by what forms of practice, and within what period it may be enforced. An agreement in advance not to apply to any court for redress is admittedly void. An agreement to confer jurisdiction upon a court not provided with it by law is likewise void. An agreement not to avail oneself of the statutes regulating practice would be held void for the same reasons. Now, the remaining question, can a party bind itself by an agreement in advance not to sue, not to appeal to the courts having jurisdiction of the matter, for fourteen years of the fifteen which are allowed by statute, thus confining himself to one-fifteenth of the time the statutes give?

It is difficult, if not inadvisable, to attempt to exact definition of the term "public policy." Story says of it (Story on Contracts, section 546) : "It has never been defined by the courts, but has been left loose and free of definition, in the same manner as fraud. This rule may, however, be laid down, that, wherever any contract conflicts with the morals of the time and contravenes any established interest of society, it is void, as being against public policy." In Brooks v. Cooper, 50 N. J. Eq., 761, 26 Atl., 978, 21 L. R. A., 617, 35 Am. St. Rep., 795, the subject appears to

have been thoroughly considered, and exhaustively treated. In summing up a number of considered cases, the court wrote: "It has been declared that public policy is a variable quality, but the principles to be applied have always remained unchanged and unchangeable, and public policy is only variable in so far as the habits, capacities, and opportunities of the public have become more varied and complex. The relations of society become from time to time more complex, statutes defining and declaring public and private rights multiply rapidly, and public policy often changes as the laws change, and therefore new applications of old principles are required. Davis v. Davis, L. R., 36 Cr. Div., 364. Whatever tends to injustice or oppression, restraint of liberty, restraint of legal right; whatever tends to the obstruction of justice, a violation of the statute, or the obstruction or perversion of the administration of the law; whatever tends to interfere with or control the administration of the law as to executive, legislative, or other official action, whenever embodied in and made the subject of a contract, the contract is against public policy, and therefore void, and not susceptible of enforcement." "When we speak of the public policy of the State, we mean the law of the State, whether found in the Constitution, the statutes, or the judicial records." People v. Hawkins, 157 N. Y., 12, 51 N. E., 257, 42 L. R. A., 490, 68 Am. St. Rep., 736. These citations will serve to show the scope of the principle. Particular instances by way of illustration and application will be given further along. We can not hope to reconcile the public policy of this State with that of other States. Each State necessarily establishes its own public policy, confined to its own territory. That they may not be uniform throughout the Union is neither surprising nor discouraging; for what may be deemed inimical by one

may be treated as immaterial by another, and, indeed, may be so.

We will come directly to the question whether statutes of limitations are in this State indications of its public policy. The strength of every contract lies in the right of the promisee to resort to the courts of public justice for redress for its violation. It is not enough that the parties may have voluntarily agreed, nor that there was a satisfactory consideration, nor that they have contractual capacity; for, if one has in such agreement bound himself to forego some positive right given to him by the law by which justice is secured, he should not be bound, for to do so is to bind oneself to oppression. which is contrary to the well-being of society. Courts are established at the public expense to redress wrongs, including breaches of contracts. They are open at all times for that purpose. Such is the public good. The knowledge of that fact exercises no small influence upon the conduct of individuals. It is useless for the oppressor to try to get what he knows the courts will not allow. So he regulates his conduct by knowledge of that fact. Stale claims, if allowed, would tend to encourage perjury and fraud. Therefore a statute is passed to restrict their assertion in the courts. On the other hand, claims which are not outlawed, for the reason just assigned, ought to have a forum in which they may be asserted against an unwilling or dishonest obligee. The existence of that right is of great value to the claimant, but it is likewise of great importance to the public, as by it the weak are assured of their rights against the strong—the sum of all government. A contract agreeing in advance that the obligee will not resort to the courts for its enforcement after one year, when the statutes of the State allow fifteen years within which to begin the action upon it, is merely an agree-

ment not to resort to the courts, in spite of the policy and laws of the State which give the right. To enforce such is to put it in the power of one party to practice oppression, and to close the courts against its relief.

Now for the instances in which the principle being discussed has been applied in this State. In Wright v. Gardner, 98 Ky., 454, 17 R., 1345, 33 S. W., 622, 35 S. W., 1116, an agreement in advance waiving the statute of limitation provided for that class of transactions and extending the time beyond the statutory period was held void, because against the public policy of the State.

An agreement in a contract between a telegraph company and the sender of a message limiting the time to which claims should be presented and prosecuted against the former for a breach of the contract to a period shorter than that fixed by statute was held void as against public policy in Western Union Tel. Co. v. Eubanks, 100 Ky., 604, 18 R., 995, 38 S. W., 1068, 36 L. R. A., 711, 66 Am. St. Rep., 361. This was followed and approved in Davis v. Western Union Tel. Co., 107 Ky., 527, 21 R., 1251, 54 S. W., 849, 92 Am. St. Rep., 371. It is true that in the Eubanks case, *supra*, it was intimated that the contract was void for the additional reason that it violated section 196 of the Constitution, prohibiting a common carrier from contracting against its common law liability. In the later case of Davis, *supra* the decision was rested solely on the ground that the stipulation was void because contrary to public policy. It was probably doubted whether the statute of limitation was any part of a common carrier's liability.

A familiar feature of life insurance policies is the provision that after a given number of payments the insured shall be entitled to a paid-up policy proportioned as the

number of payments bear to the maximum number required to be made by the policy, provided the insured shall within six months, or ·some such time, surrender his policy and demand the paid-up policy.  In a number of cases it has been held that the provision limiting the time within which to demand the paid-up policy was not of the essence of the contract, was in the nature of a forfeiture, and was void. Montgomery v. Phoenix Life Ins. Co., 14 Bush, 51; Mutual Life Ins. Co. v. Jarboe, 102 Ky., 80, 19 R., 1501, 42 S. W., 1097 (overruling Northwestern Mut. Life Ins. Co. v. Barbour, 92 Ky., 427, 13 R., 619, 17 S. W., 796, 15 L. R. A., 449, and Hexter v. U. S. Life Ins. Co., 91 Ky., 356, 12 R., 921, 15 S. W., 863) ; Washington Life Ins. Co. v. Miles, 66 S. W., 740, 23 Ky. Law Rep., 1705; Ins. Co. v. Patterson 22 R., 1282, 60 S. W., 383, 53 L. R. A., 378, 95 Am. St. Rep., 393; N. Y. Life Ins. Co. v. Warren Deposit Bank, 75 S. W., 234, 25 Ky. Law Rep., 326; Manhattan Life Ins. Co. v. Savage's Adm'r, 63 S. W., 278, 23 Ky. Law Rep., 483; Mutual Life Ins. Co v. O'Neil, 116 Ky., 742, 76 S. W., 839, 25 Ky. Law Rep., 983.

Under section 700, Kentucky Statutes, it is provided that, in case of total loss of an insured building by fire, the insurer shall pay the amount of its policy, except in case of fraud or deterioration' in value since the policy was issued. Contracts attempting in advance of loss to waive the statute, and agreeing upon a different basis of settlement, are held void as being against the public policy evinced by the statute, in Caledonian Ins. Co. v. Cooke, 41 S. W., 279, 101 Ky., 412, 19 R., 651; Hartford Fire Ins. Co. v. Bourbon County Court, 72 S. W., 739, 24 Ky. Law Rep., 1850; Thuringia Ins. Co. v. Malott, 111 Ky., 917, 23 R., 1248, 64 S. W., 991, 55 L. R. A., 277; Palatine Ins. Co. v. Weiss, 109 Ky., 464, 22 R., 994, 59 S. W., 509.

A contract in advance waiving the statute of exemption is held void in Moxley v. Ragan, 10 Bush, 156. Agreements to pay attorney's fee in case of suit to enforce a contract are held void, because in contravention of the public policy, in Thomasson v. Townsend, 10 Bush, 114, and Witherspoon v. Musselman, 14 Bush, 214, 29 Am. Rep., 404.

The Constitution of this State (section 59) prohibits the Legislature from passing special or local acts concerning quite a number of enumerated subjects, including "(5) to regulate the limitation of civil or criminal actions." Under this provision it has been held that a statute limiting actions against cities of the first class in this Commonwealth to six months, whether based upon torts or contracts—the general law providing different periods—was void. Gorley v. Louisville, 104 Ky., 372, 20 R., 602, 47 S. W., 263; Louisville v. Kuntz, 104 Ky., 584, 20 R., 805, 47 S. W., 592. In the last named case, it was said: "When the Constitution prohibits the Legislature from passing special laws upon any given subject, it means that all laws upon that subject shall operate alike upon all, whether individual or corporate, public or private. It is a safeguard provided by the Constitution for the protection of the weak as well as the strong."

A contract between an express company and a shipper, limiting its liability for a breach of its bill of lading to six months, when the statutory period was longer, was held void, as contrary to public policy, in Adams Express Co. v. Walker (decided Nov. 22, 1904) 119 Ky., 83 S. W., 106, 26 R., 1025.

Unless these cases are to be followed, and the principle which governed them applied to all cases, we will have it that everybody except express and telegraph companies may by contract abrogate the statutes of limitation, by stipulat-

ing for a shorter period. Each contract will have its own barrier, which the courts will be bound to observe. And, though the Legislature is prohibited by the Constitution from providing any but general and uniform laws of limitation, parties to contracts may have as many different periods as there may be contracts. Railroad operators, merchants, bankers, and employers of labor may all contract for such periods as may suit their whim or avarice, to which the other party may be compelled to submit by his present necessities. It would make the law a subject of barter, and the courts of justice to open or close as the result of a dicker. It seems to us to logically follow that, if part of a contract of insurance is not forfeited by a failure to comply with a stipulation in the policy that it will be unless it is claimed within six months, all of the policy will not be forfeited by a similar failure to sue for it within one year, according to the stipulations of the policy to that effect. In each instance the essence of the proviso in the policy is to work a forfeiture of the vested interest—a property right—because the person entitled to it does not sue for it within an agreed time, less than the statutory period of limitation.

The statutes of limitation of this State, like statutes of exemption, are enacted, not solely for individual welfare, but for the public well-being. They are, under our Constitution, of general and universal application within the State, and are indications of the State's public policy on those subjects. Contracts in contravention of them are void. In Owen v. Insurance Co., 87 Ky., 571, 10 R., 608, 10 S. W., 119, the policy contained a provision that suit upon it must be begun within one year from the accrual of the cause of action. The question presented for decision was whether the year had gone. The court decided that it had not, as the last day of the year fell on Sunday, which

was excluded by the court, so as to allow the 365th day to fall on a secular day, when the suit could be filed. Having decided that the year had not run, it was not necessarily involved whether the stipulation was valid. The court, for the purposes of the case, assumed that it was; and this it might have done, whether it was or was not valid. In Kentucky Mutual Security Fund Co. v. Turner, 89 Ky., 665, 11 R., 793, 13 S. W., 104, a policy of life insurance contained a similar clause, limiting the cause of action to one year, should a cause arise. A cause of action did accrue upon it. Demand was made of the insurer within one year, and it made a partial payment upon it. Failing to pay the balance, suit was brought upon the policy to recover it. The insurer pleaded the contract limitation. The replication, in avoidance, was that the partial payment had operated to start anew the period of limitation within which suit might be brought. The question presented for decision, and decided, was that a partial payment within the year did operate to start anew the limitation period. A recovery was allowed. Counsel for the plaintiff admitted that the one-year provision was valid. The court likewise assumed that it was. There was no controversy about it in the case. It was passed over in the opinion, without citation of authority or statement of reason for its support. As in the case of Owen v. Insurance Co., *supra*, it was *obiter dictum*. In Lee v. Union Central Life Ins. Co., 22 Ky. Law Rep., 1712, 56 S. W., 724, the question was directly presented, and was finally decided on rehearing by an equally divided court. In Smith v. Herd, 110 Ky., 56, 60 S. W., 841, 1121, 22 Ky. Law Rep., 1596, the question was again squarely presented and was decided in conformity to the reasoning in Riddlesbarger v. Insurance Co., *supra*, and citing Owen v. Howard Ins. Co., *supra*.

The gist of the reasoning advanced in the Riddlesbarger case, and in the text-books which have adopted it, is that it is essential to the insurer to have the claim promptly presented and adjusted, as by a great lapse of time the circumstances of the transaction are apt to fade from the memory of disinterested witnesses, or the evidence will be lost, and the insured or beneficiary, being on the ground, would have an undue advantage, which might be turned into the fabrication of evidence and the like to support unmeritorious claims. The argument, when presented to the Legislature, might justify that body's enacting a general law of limitation for this class of contracts different from that applied to ordinary written obligations. But it is not a good reason why the statute now in force and applicable to such contracts—the statute of fifteen years (section 2514, Ky. St., 1903) should not be applied by the courts. Beside, the condition of the law in this State does not warrant the application of the reasoning. For here we enforce the provision of the contract requiring that the insured or beneficiary furnish promptly notice and proof of loss as a condition precedent to his right to sue. This puts before the insurer the fact that it is claimed to be liable on the policy, and the circumstances and names of witnesses by which it is proposed to establish it. Aetna Life Ins. Co. v. Milward, 82 S. W., 364, 26 Ky. Law Rep., 589. It is then open to the insurer to protect itself, if it deems the claim unfounded in merit, in two ways: (1) To proceed under the Code to perpetuate its evidence, so that, whenever the action may be brought against it, it has lost nothing by deaths and removals of witnesses; (2) or it may sue at once to be relieved of the liability claimed, on the ground that it has been discharged, or that the contract has terminated, or for whatever reason,

and it may thus at once force a trial of the matter, getting such advantages as accrue from that fact.

While recognizing the great ability of the justices of the Supreme Court, and the learning and wisdom of the courts of final resort of the States that have adopted a different policy, yet we feel constrained to declare that the public policy of Kentucky is a matter peculiarly for her own construction and application. The reasoning applied to uphold the distinction made in favor of insurance contracts to us is unsatisfying, while the objections to the principle on which it rests are insuperable. The supreme courts of two other States have come to the same conclusion at which we have arrived. Barnes v. McMurtry, 29 Neb., 184, 45 N. W., 285, and Georgia Masonic Insurance Co. v. Davis, 63 Ga., 471. And there may be others. Smith v. Herd, 110 Ky., 56, 22 R., 1596, 60 S. W., 841, 1121, is overruled. Lee v. Union Central Life Ins. Co., supra, will not longer be considered authority on this point.

We conclude that the provision in the policy that no suit should be maintained upon it, unless begun within one year from the death of the insured, was in contravention of the public policy of this State, and is void. It follows that the judgment of the circuit court, having been in conformity to this conclusion, is affirmed, with damages.

Judge Paynter dissents.

On rehearing by Judge O'Rear, opinion extended:

The policy provides that any indebtedness of the assured to the company will be deducted from the face of the policy if the latter becomes a claim against the company. The note for $396.80 and interest from December 15, 1897, spoken of in the opinion, ought to have been credited on the sum payable to appellee under the terms of the policy. For the error

in failure to do so, the judgment must be reversed, and cause remanded, to enter judgment on the verdict subject to the credit herein indicated. The opinion in other respects is adhered to.