CASE 20.—ACTION BY WILLIAM B. McCLURE AND AN-
OTHER AGAINST THE CITIZENS LIFE INSUR-
ANCE COMPANY OF KENTUCKY.—April 29, 1910.

## Citizens Life Ins. Co. v. McClure, &c.

Appeal From Fleming Circuit Court.

C. D. NEWELL, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1   Insurance—Life Insurance— Defenses—Incontestability.— In an action on a life policy which provided that, if the premiums are duly paid as required, the policy shall be incontestable after the first year, where the second premium had been paid by insured and the policy renewed, the company could not defend on the ground of false representations in the application that insured had never had consumption and as to his mother's good health at the time, etc., as the policy became incontestable after renewal; Ky. St. section 2515, requiring actions to obtain relief from contracts procured by fraud to be brought in five years, not rendering the provision of the policy invalid and authorizing relief against the fraud, as statutes of limitation only apply to right of action and not to defenses.

2.  Insurance—Life Insurance—Validity of Policies—Incontest-
    ability Clause.—A provision in a life policy making it in-
    contestable after it has been renewed beyond the first year
    if the premiums are duly paid is valid and not contrary to
    public policy.

HELM BRUCE and J. H. POWERS for appellants.

O. R. BRIGHT FOR APPELLEES.

OPINION OF THE COURT BY JUDGE SETTLE—Affirm-
ing.

On July 24, 1907, the appellant issued to Mathew
B. McClure a policy insuring his life for $3,000, pay-
able at death to his estate.  The insured upon receiv-
ing the policy paid the first premium, and thereafter
with appellant's consent assigned the policy to his
father and brother, the appellees, William B. and Jo-
seph C. McClure.  The second premium on the policy
became due July 24, 1908, and was then paid by the
insured.  In October of that year he died, and, appel-
lant having refused to pay the policy, appellees,
claiming to be the beneficiaries, brought this action
to compel its payment.  The answer and counterclaim
of appellant charged that the policy had been fraudu-
lently obtained by the insured, and for that reason
imposed no liability upon it, and should be adjudged
void, the fraud consisting in his having falsely rep-
resented in his application for the insurance, in an-
swering certain questions contained therein, that he
had never had consumption and had not consulted
any physician since 1902; whereas, in fact he did have
consumption and had been treated for it, and in-
formed by his physician that he had it within the year
he made his application; that he further falsely rep-
resented in his application that his mother was then
in good health, when in fact she was then dying of

consumption, and did die with that disease only two days after the application was made; that he likewise falsely represented that one of his sisters died with pneumonia, when the truth was that she had died with consumption. The answer and counterclaim contained the averments that these representations were false; that they were known by the insured to be false when made; that they were made by him for the fraudulent purpose of obtaining the policy; and that appellant was induced thereby to issue the policy, which it would not have done had it known the representations to be false. The answer and counterclaim also alleged that appellant was ready and willing to pay to whomsoever the court might direct the two premiums the insured had paid it, but that, as there was no administrator of his estate, appellant did not know to whom it should tender them. Appellees filed a general demurrer to the answer, which the circuit court sustained, and entered judgment against appellant for the amount of the policy. From that judgment this appeal is prosecuted.

The policy which was copied into the petition and filed as an exhibit contained, among other things, the following stipulation: "If the premiums are duly paid as required, this policy, after it has been renewed beyond the first year, shall be incontestable."

The principal question involved on this appeal is: Can the apellant, in view of the above stipulation of the policy, rely upon the defense interposed by its answer? It is insisted for appellant that it had the right to do so, and that the Legislature of this state has, by the enactment of section 2515, Ky. St. (Russell's St. sec. 224), prescribed a period of limitation within which relief can be obtained from a contract procured by fraud; that this period is five years, and

not one year; that the stipulation of the policy making it incontestable after the payment of the second premium at the end of the first year should not be so construed as to make the limitation interposed by the statute, supra, inapplicable to this case, and, therefore the contractual provision of the policy in question is not valid; and that inasmuch as five years after the perpetration of the fraud had not elapsed when the answer and counterclaim were filed, the court erred in sustaining a demurrer to the pleading. In support of this contention the case of Union Central Life Insurance Company v. Spinks, 119 Ky. 261, 83 S. W. 615, 84 S. W. 1160, 26 Ky. Law Rep. 1205, 27 Ky. Law Rep. 325, 69 L. R. A. 264, is relied on. In that case the court held that a provision in a life policy to the effect that no suit should be maintained thereon, unless commenced within one year from the death of the insured, was void as in contravention of public policy; the statute prescribing a period of 15 years for actions on such contracts. It is, however, conceded by counsel for appellant that under the ruling announced in the case of Kansas Mutual Ins. Co. v. Whitehead, 123 Ky. 21, 93 S. W. 609, 29 Ky. Law Rep. 458, upon which the court below bases its ruling on the demurrer, appellant would be estopped by the provision of the policy referred to from relying upon the defense contained in its answer, but insisted that there is a conflict between that case and the Spinks Case, and that, therefore, the Whitehead Case should be overruled.

In the latter case the court, in upholding the incontestable clause in the policy, in the opinion said: "In regard to the incontestable clause, appellants insist: First, that it should be construed to exclude any defense based upon the personal fraud of the in-

sured; and, second, if this be not so, that the provision is void as authorizing and promoting fraud, contrary to public policy. It seems to us that the terms of the clause clearly embrace all defenses, except those specifically excluded by its language; and these are, first, that the premiums are duly paid, and, second, that the requirements of the company as to age, military or naval service in time of war are observed. * * * Webster defines 'incontestable' to mean "not contestable; not to be disputed; that which cannot be called in question, or controverted; incontrovertable; indisputable.' It must be conceded that if all defenses predicated upon the fraud of the insured are excluded there will be very little left upon which the incontestable clause can operate. * * * Is the clause void as contravening public policy? It is said that as a rule fraud vitiates every contract, and that a sound morality requires that the courts should forbid one's contracting for immunity from the consequences of his own fraud. All this may be admitted to be sound as an abstract proposition; but it does not hold good in the actual affairs of life, when rules must be adjusted to meet conditions rather than theories. In the case at bar full force and effect is given to the theory for a specified time—two years—and after that another public policy comes into play, which recognizes the right of the insured, under certain conditions, to contract for peace and for a knowledge that, after the stipulated time has expired, neither he, nor, if he be dead, those for whom he has undertaken to provide, shall be put to the expense and trouble of a trial of the question as to whether or not fraud was perpetrated in the procurement of the policy. This view does not exclude the consideration of fraud, but allows the parties to fix by stipulation the

length of time in which the fraud of the insured can operate to deceive the insurer. It recognizes the right of the insurer, predicated upon a vast experience and profound knowledge in such matters, to agree that in a stipulated time, fixed by himself, he can unearth and drag to light any fraud committed by the insured and protect himself from the consequences. * * * There is no more public policy against the fraud of the insured than against the fraud of the insurer. The incontestable clause is upheld in law, not for the purpose of upholding fraud, but for the purpose of shutting off harassing defenses based upon alleged fraud; and, in so doing, the law merely adopts the certificate of the insurer that within a given time he can expose and render innocuous any fraud in the preliminary statement of the insured. * * * This is not a case where the insurer says to the insured: 'I require you to make certain warranties, and, although you may act fraudulently in regard to them, yet I will waive and hold you harmless against the consequences of your fraud.' That, indeed, would be a vicious contract and clearly open to the criticism of being against public policy as promotive of fraud. The incontestable clause under consideration, on the contrary, is a reasonable stipulation, operating in favor of both the contracting parties. It gives to the insurer ample time to investigate all of the warranties of the insured, and, after the lapse of this time, it gives to the insured that quietude of heart which comes from a knowledge that the fund which the solicitude of love had provided for the objects of its bounty is placed beyond the pale of question. Not only is this view consonant with reason, but it is upheld by the great weight of authority."

The opinion cites and liberally quotes from the opinions in Reagon v. Union Mutual Life Ins. Co., 189 Mass. 555, 76 N. E. 217, 2 L. R. A. (N. S.) 821, 109 Am. St. Rep. 659; Wright v. Mutual Benefit Life Association of America, 118 N. Y. 237, 23 N. E. 186, 6 L. R. A. 731, 16 Am. St. Rep. 749; Clement v. N. Y. Life Ins. Co., 101 Tenn. 22, 46 S. W. 561, 42 L. R. A. 247, 70 Am. St. Rep. 650; and Murray v. State Mut. Life Assurance Society, 22 R. I. 524, 48 Atl. 800, 53 L. R. A. 742—in each of which an incontestable clause, similar to the one under consideration, was enforced. This court seems to have first declared its view upon this question in the case of Sun Life Ins. Co. v. Taylor, 108 Ky. 408, 56 S. W. 668, 94 Am. St. Rep. 383, in which it held an incontestable clause in a policy valid, although its payment was resisted upon the ground that the insured committed suicide while sane. It was strongly urged by the insurance company in that case that public policy forbade the enforcement of such a stipulation, in the face of the insured's crime against the law and himself; but the court held that after the expiration of the stipulated term (three years) the policy was incontestable. Hence the stipulation was upheld. Royal Circle v. Achterrath, 204 Ill. 549, 68 N. E. 492, 63 L. R. A. 452, 98 Am. St. Rep. 224.

In N. Y. Life Ins. Co. v. Weaver's Adm'r, 114 Ky. 295, 70 S. W. 628, suit was brought by the insurance company to recover of the administrator of the estate of the insured damages for the loss it sustained in paying, following the death of the latter, a policy on her life containing an incontestable clause, upon the ground that she and her physician had procured the policy by fraud. It was held that the action could not be maintained. It is true it is said in the opinion

that the fact that the policy was incontestable did not preclude the insurance company from rescinding it in a reasonable time after discovering the fraud and upon returning the premiums received. The opinion does not indicate, however, what would have been a reasonable time for bringing the action, or whether it could have been done at all after the policy became by its terms incontestable, but concludes with the following statement: "Besides, if, as appellant seems to concede, the incontestable clause in the policy precludes it from resisting its payment on the ground of fraud, it logically follows that it is equally efficacious to defeat any action brought against the estate of the decedent for damages by reason thereof."

Mathew B. McClure, the insured, paid two premiums of $95.49 each on the policy issued him by the appellant. A year intervened between these payments, and by the payment of the second premium the policy became incontestable. If time were an ingredient of appellant's defense, he had a year to ascertain whether the statements and representations made by the insured in the application for the policy were false. It does not lie in appellant's mouth to say that the time allowed for the investigation was unreasonably brief, for it fixed the time and made it a stipulation of the policy, and to the time as thus fixed the insured, by accepting the policy, assented. Proofs of the insured's death must have been promptly furnished appellant, for suit was brought on the policy less than two months after his death. Within that two months appellant obtained all the facts with respect to the alleged fraud pleaded in its answer and counterclaim, and these facts, so quickly discovered after the death of the insured, could by any sort

of diligence have been ascertained by appellant during the full year intervening between the payment of the first and second premiums by the insured. It is manifest, therefore, that appellant can make no complaint that the enforcement of the provision by which the policy was made incontestable would be a hardship to it; but, if such were the case, it could not be relied on as a ground of defense, as appellant will not be allowed to repudiate, and is estopped to deny the validity of, this important feature of its own contract, for the presence of which in the policy it alone is responsible—having made the bed, it must lie in it. Finding no reason for either withdrawing or modifying the conclusions expressed in the cases of Sun Life Ins. Co. v. Taylor, and Kansas Mut. Ins. Co. v. Whitehead, supra, we must declare that the provision making the policy in this case incontestable is enforceable; hence the circuit court did not err in sustaining the demurrer to appellant's answer and counterclaim.

We do not agree with counsel for appellant that the opinion in the case of Kansas Mut. Ins. Co. v. Whitehead is in conflict with that of Union Central Life Ins. Co. v. Spinks, 119 Ky. 261, 83 S. W. 615, 84 S. W. 1160, 26 Ky. Law Rep. 1205, 27 Ky. Law Rep. 325, 69 L. R. A. 264. The Spinks Case was decided in December, 1904, and the Whitehead Case in May, 1906. The Spinks Case was not mentioned in the opinion in the Whitehead Case, and this was so because the court did not regard the cases as at all similar. In the Spinks Case the incontestable clause was not in issue, but one of the questions in that case was whether a clause of the policy, providing "that no suit to recover under this policy shall be brought after one year from the death of the in-

sured,'' was valid. The action was not instituted
within a year of the death of the insured, and for that
reason the insurance company insisted that it could
not be maintained; but the contention was rejected by
the court on the ground that to enforce the stipula-
tion of the policy in question would permit the part-
ies, by contract, to substitute a shorter period  of
limitation, binding upon the courts, for the statute
of limitation allowing 15 years for suing upon such
a contract as that  contained  in the policy which
would contravene the public policy of the state.   In
other words, the practical effect of the  stipulation
would have been to create a shorter period of limi-
tation for the benefit of the insurer and inimical to
the insured,   which,   though intended to apply to
actions upon policies alone, could, whenever agreed
to by the parties, be extended to all contracts, and
thereby abrogate the statutes of limitation which are
expressive of the public policy, and therefore favor-
ably regarded by the law.

In the Whitehead Case, as in the one at bar, the
question involved was as to the validity of the stip-
ulation making the policy incontestable.   The ques-
tion of limitation has no proper place in either case.
Indeed, statutes of limitations apply to actions and
not defenses; so discussion of the statute of limita-
tions in this case would, therefore, be irrelevant.  It
is not claimed by appellee that appellant's defense
is barred by limitation.  The sole question is:  Does
the stipulation of the policy in question preclude
appellant from making the defense set up in the
answer?   The fact that the effect of holding  the
policy incontestable would  be  to exclude a defense
that would be good if the policy were not incontesta-
ble is beside the question.  It is  incontestability of

the policy and not the limitation, that bars the defense. The parties to the contract of insurance in making it incontestable, as in the policy provided, did not substitute a shorter period of limitation for that provided by the statute. The stipulation has no reference to limitation, but to a waiver by the insurer of the right of defense on the ground of fraud that may have been practiced by the insured in obtaining the policy, in consideration of the latter's making payment of premiums as required by the policy; the time for the policy to become incontestable being fixed as of the payment of the second premium, to give the insurer time to satisfy itself that no fraud was committed by the insured. If, within that time, discovery of the fraud is made, the policy may be canceled by the insurer, without suit, under another provision of the policy; but if no fraud is discovered, or, if discovered, the policy is not canceled before the payment of the second premium, and the insured dies after the policy becomes incontestable, defense cannot be made by the insurer, to an action on the policy, on the ground that it was procured by fraud on the part of the insured. The provision as to incontestability seems to be a most reasonable one. It is fair both to insurer and insured, for it is calculated to make the former diligent in investigating the truth or falsity of the statements made in the application for the policy, and affords time for the investigation; while to the latter it furnishes an incentive to promptness in paying the second and all subsequent premiums and gives assurance that in his incontestable policy he has a safe investment by which those dependent upon him may be benefited after his death. There is nothing in such a stipulation hurtful to the rights of the parties, or contrary to public policy.

No reason is perceived for passing upon the question whether a tender should have been made by appellant of the premiums it received on the policy, which in its answer and counterclaim it expresses a willingness to pay to whomsoever the court may direct, as the question we have decided is conclusive of the case.

Wherefore the judgment is affirmed.