## METROPOLITAN LIFE INS. CO. v. PEELER.

No. 10771—Opinion Filed Dec. 10, 1918.

[Reprinted Because of Error in Printing in 71 Okla. 238.]

(Syllabus.)

1. **Insurance—Life Insurance — Incontestability—Fraud.**

A provision in a life insurance policy that "this policy (and the application therefor) constitutes the entire contract between the parties and shall be incontestable after one year from the date of its issue, except for nonpayment of premiums," includes fraud on the part of the insured in obtaining the insurance, and and after one year from the date the policy is issued, the insurance company cannot plead such fraud as a defense to an action brought by beneficiary under the policy to recover the amount thereof, or in a cross-action to cancel the policy and rescind the insurance contract.

2. **Same—Incontestability Clause — Public Policy.**

Such a provision in a life insurance policy is neither unreasonable nor contrary to public policy.

3. **Same—Validity.**

Such a provision in life insurance policy is not contrary to any express provision of law, nor contrary to the policy of express law, though not expressly prohibited, nor otherwise contrary to good morals.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Willie B. Peeler against the Metropolitan Life Insurance Company. Plaintiff's motion for judgment on the pleadings. sustained. and defendant brings error. Affirmed.

Embry. Crockett & Johnson, for plaintiff in error.

E. G. McAdams and D. S. Levy, for defendant in error.

TISINGER, J. On August 8, 1916, the Metropolitan Life Insurance Company issued its policy of insurance on her life to Nannie D. Lloyd, in which Willie B. Peeler was named as beneficiary. On August 10. 1917, one year and two days after the policy was issued, the insured died. Suit was brought by the beneficiary against the insurance company to recover the amount of the policy of insurance, and a copy of the policy was attached to the petition and, by special reference, made a part of it. This policy contained the following clause:

"Incontestability.—This policy (and the application therefor) constitutes the entire contract between the parties and shall be incontestable after one year from the date of its issue, except for nonpayment of premiums."

The insurance company defended the action brought against it by alleging in its answer that the insured. for the purpose of obtaining the policy and defrauding it, falsely represented to it in her written application, which by its terms formed the basis

of the insurance and was made a part of the policy, that she had never had cancer or tumor, had never had any illness since childhood, had never been attended or prescribed for by a physician, had never been confined to the house by illness, and had never been an inmate of or visited a hospital or sanitarium for treatment; when, in fact, she was, during the month of January, 1916, afflicted with cancer of the breast; that she consulted with and was attended by a physician and surgeon on account of this affliction, who performed an operation removing the cancer, which operation resulted in a personal injury or deformity; that she was an inmate of a hospital during the month of January, 1916; and that. for a long time after the cancer was removed, she was confined to her home on account of the disease and the operation. The company also alleged that the statements and representations so made by the insured to it were knowingly and falsely made by her with the fraudulent intent to induce it, and by means whereof it was induced, to issue the. policy of insurance on her life; and that, on account of the fraud of the insured in obtaining the insurance, the beneficiary named in the policy was not entitled to recover. A cross-petition was also filed by the insurance company alleging substantially the same facts and praying for a cancellation of the policy on the ground of fraud in its procurement.

A motion for judgment on the pleadings was filed by the beneficiary and sustained by the court. From this judgment the insurance company appeals.

Accepting the allegations in the answer and cross-petition of the insurance company as true, as they had to be accepted by the trial court in rendering its judgment on the pleadings, there is no question but what the insured was not a fit and suitable subject for insurance at the time the policy was issued; that ill health and bodily infirmities of a serious character, well known to her and concealed by her in making her application, would have caused the company to reject the application had it known of the same.

The rights of the parties to this suit are therefore made to turn on the force and effect of the incontestable clause in the insurance policy, which expressly stipulates that it "shall be incontestable after one year from the date of its issue, except for nonpayment of premiums."

It is to be presumed that the insurance company had some purpose in view when it offered to the insured a policy containing this stipulation and that the stipulation itself had some meaning. It was not inserted as a mere matter of form. It was an inducement for the insured to take the insurance. It guaranteed her that her policy should not be contested after the expiration of one year, provided the premiums were paid. It carried with it the assurance that if she paid the premiums and died after one year from the date it issued, the beneficiary selected by her and for whom she attempted to provide, would not be met with a contest and lawsuit to determine whether the insurance ever had any validity or force. The stipulation is broad in its terms. There is only one condition upon which the validity of the policy can be questioned after the lapse of a year. and that is the nonpayment of premiums. The meaning of the provision is that, if the premiums are paid, the liability shall, be absolute under the policy, and that no question shall be made of its original validity. The language admits of no reasonable construction other than that the company reserves to itself the right to ascertain all the matter and facts material to its risk and the validity of its contract for one year; and that if within that time it does not ascertain all the facts, and does not cancel and rescind the contract, it may not do so afterwards upon any ground then in existence. Mutual Life Insurance Co. v. Buford, 61 Okla. 158, 160 Pac. 928; Clement v. Insurance Co., 101 Tenn. 22, 46 S. W. 561, 42 L. R. A. 247, 70 Am. St. Rep. 650; Thompson v. Fidelity Insurance Co., 116 Tenn. 557, 92 S. W. 1098, 6 L. R. A. (N. S.) 1039, 115 Am. St. Rep. 823; Wright v. Mutual Ben. Ass'n, 118 N. Y. 237, 6 L. R. A. 731.

It is urged by the insurance company that on account of the fraud of the insured in procuring the policy the contract of insurance is null and void; that in this, as in other cases, fraud vitiates the agreements and undertakings based upon it, and may be set aside at the instance of the party defrauded. It is true that fraud in procuring the policy would vitiate it at the option and upon the motion of the party defrauded; but, under the stipulation in question, the defrauded party must within the year after the policy is issued test its validity by exercising his right to repudiate and rescind it. The stipulation is in the nature of, and serves a similar purpose as, the statutes of limitations, which are sometimes called statutes of repose. It creates by contract a limitation for the benefit of the insured, within which limited period the insurer must test, if ever, the validity of the policy.

The general rule is announced in Ruling Case Law, vol. 14, section 380 of the article on Insurance as follows:

"A provision in a contract of insurance limiting the time in which the insurer may take advantage of certain facts that might otherwise constitute a good defense to its liability on such contract, precludes every defense to the policy other than the defenses excepted in the provision itself, including false answers in the application, and even fraud where the time fixed by the contract is not unreasonably short." Indiana Life Ins. Co. v. McGinnis, 180 Ind. 9, 101 N. E. 289, 45 L. R. A. (N. S.) 192; Great Western Life Ins. Co. v. Snavely, 206 Fed. 20, 124 C. C. A. 154, 46 L. R. A. (N. S.) 1056; Mass. Ben. Life Ass'n v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261; Citizens Life Ins. Co. v. McClure, 138 Ky. 138, 127 S. W. 749, 27 L. R. A. (N. S.) 1026; Kansas Mut. Life Ins. Co. v. Whitehead, 123 Ky. 21, 93 S. W. 609, 13 Ann. Cas. 301; Clement v. New York Life Ins. Co., 101 Tenn. 22, 46 S. W. 561, 70 A. S. R. 650, 42 L. R. A. 247.

It was said by the Supreme Court of Tennessee in the case of Clement v. New York Life Ins. Co., supra:

"Fraud is always required to be set up promptly when discovered, or it may be treated as waived, and the effect of this stipulation is that the insurer must exercise due diligence to discover such fraud within the year, and if it fails to do so, it will treat it as waived, and no inquiry will be made or allowed into such matters."

But the insurance company contends that this stipulation is void, being against public policy, and that the interpretation and construction we have given it is repugnant to section 973, Revised Laws 1910, which reads:

"All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

This contention, it seems to us, is based upon an entire misconception of the object and meaning of the stipulation. It was not a stipulation to exempt any one from responsibility for his own fraud. On the contrary, it recognizes the possibility of fraud, but provides ample time and opportunity within which it may be established.

Under the title "Life Insurance", 25 Cyc. p. 873, the following is stated as the rule:

"A clause now often inserted in policies, that after being in force a specified time they shall not be disputed or shall be incontestable, precludes any defense after the stipulated period on account of false statements which were warranted to be true, even though they were made fraudulently."

And that such a clause is not against public policy as applied to the defense of fraud, see Mass. Ben. Life Ass'n v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261; Murray v. State Mutual Life Ins. Co., 22 R. I. 524, 48 Atl. 800, 53 L. R. A. 742; Union Central Life Ins. Co. v. Fox, 106 Tenn. 347, 61 S. W. 62, 82 Am. St. Rep. 885; Patterson v. Natural Premium Life Ins. Co., 100 Wis. 118, 75 N. W. 980, 69 Am. St. Rep. 899, 42 L. R. A. 253.

As was said by the Supreme Court of Georgia in the case of Mass. Ben. Life Ass'n, supra:

"Where parties enter into a contract which from its nature affords an opportunity to one party to perpetrate a fraud upon another, and it is stipulated therein that the party who is liable to be defrauded shall have a specified time in which to make inquiry as to the acts and conduct of the other party, he is on notice, by the very terms of the contract itself, that fraud may be involved in it, and the duty is upon him to commence at once an investigation into the acts, conduct, and representations of the other party; and if the time fixed is such that the information which would show that the fraud had been perpetrated could have been, by the exercise of ordinary diligence, obtained, then the parties are bound by their contract as to time, and after the lapse of that time fraud is no longer a defense. This does not violate in any way the well settled principle that fraud is to be abhorred, vitiates everything it touches, and the person guilty of it is not to be countenanced in any way by the courts. While all this is true, it is equally well settled that a contract which has for its foundation a willful fraud may become vitalized and enforceable by the negligence of the party who was the victim of the fraud."

In the case of Wright v. Mutual Ben. Life Ass'n, 43 Hun. 61, in construing a similar stipulation the court said:

"A stipulation like the one under consideration ought to be an incentive for the insurer to exercise vigilance and good faith in investigating the truth or falsity of the representations upon which the policy is issued while the matter is fresh. The witnesses are all alive, and the exact truth can, if ever, be ascertained; and the stipulation prevents the insurer from lying by and receiving the premiums during the life of the insured, and after his death, when the good faith and truth of his representations cannot be supported by his oath, contesting the policy upon the ground that the insured's representations were false or untrue. Such a stipula-

tion is neither unreasonable nor contrary to public policy."

In affirming this decision the Court of Appeals of the State of New York (118 N. Y. 237, 6 L. R. A. 731), speaking through Mr. Justice Potter, said:

"No doubt, the defendant held it out as an inducement to insurance by removing the hesitation in the minds of many prudent men against paying ill-afforded premiums for a series of years, when, in the end, and after the payment of premiums, the death of the insured, and the loss of his and the testimony of others, the claimant, instead of receiving the promised insurance, may be met by an expensive lawsuit, to determine that the insurance which the deceased had been paying for through many years has not, and never had, any existence, except in name. While fraud is obnoxious, and should justly vitiate and contracts, the courts should exercise care that fraud and imposition should not be successful in annulling an agreement to the effect that, if cause be not found and charged within a reasonable and specific time, establishing the invalidity of the contract of insurance, it should thereafter be treated as valid. Hence I fail to perceive any error in the disposition made of this question in the court below."

We conclude that the stipulation in question is not against public policy, and that it is not repugnant to section 973, Revised Laws 1910.

It is further contended by the insurance company that the stipulation in question is in violation of section 977, Revised Laws 1910, which reads:

"Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void."

It contends: First, that by this stipulation it is restricted from enforcing its rights under the contract, and, second, that inasmuch as a party may, under the general statute of limitations (section 4657, Revised Laws 1910), commence an action for relief on the grounds of fraud within two years from the discovery of the fraud, the stipulation making the policy "incontestable after one year from the date of its issue," is void where fraud in its procurement is relied on as a defense against a suit to recover on the policy, and where a cross-petition is also begun to rescind the contract and cancel the policy on that ground.

The first contention is wholly untenable. The insurance company is not restricted by stipulation from enforcing its rights under the contract by the usual legal proceedings in the ordinary tribunals. In fact, it is now engaged in an effort to enforce what it deems to be its rights under the contract. As was said by Mr. Justice Kane in the case of Voris v. Hall, 71 Okla. 44, 175 Pac. 220:

"The section * * * is not directed against stipulations in contracts which restrict the rights of the parties to pursue the usual legal remedies in the ordinary tribunal, etc., but against stipulations or conditions by which any party to a contract is restricted from enforcing his rights under the contract, by the usual legal proceedings, etc. There is no stipulation or condition contained in either of these contracts by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals. and the fact that the parties are now engaged in an effort to enforce what they deem to be their respective rights under the contract by legal proceedings in the ordinary tribunals of the state furnishes the most convincing proof that this is so."

The second contention presents a more difficult question. The period fixed by law within which an action may be brought for relief on the ground of fraud is for the benefit and protection of the parties interested in the contract. Ordinarily and in the absence of prohibitory statute, it is competent for them to stipulate that the time given them by the law within which they may act shall be shortened or lengthened as they may agree. Statutes of limitations may be waived by agreement for a definite or limited time or for an indefinite or unlimited time. State L. & T. Co. v. Cochrain, 130 Cal. 245, 62 Pac. 466, 600; Wells v. Enright, 127 Cal. 669, 60 Pac. 439, 49 L. R. A. 647; Smith v. Lawrence, 38 Cal. 24, 99 Am. Dec. 344; Holman v. Omaha R. Co., 117 Iowa, 268, 90 N. W. 833, 94 Am. St. Rep. 293; Webber v. Williams College, 23 Pick. (Mass.) 302; Mann v. Cooper, 2 App. Cas. (D. C.) 226; Bridges v. Stephens, 132 Mo. 524, 34 S. W. 555; Quick v. Corlies 39 N. J. L. 11; State Trust Co. v. Sheldon, 68 Vt. 259, 35 Atl. 177; In re Board of Education of City of Perry, 35 Okla. 733, 130 Pac. 951; Blumle v. Kramer, 14 Okla. 366, 79 Pac. 215.

Section 977, Revised Laws 1910, relied on by the insurance company, is a statement of the common-law rule that a private agreement to avoid a public statute is against public policy and void. The exception to the rule is that, where no principle of public policy is violated, parties are at liberty to forego the protection of the law.

Whether a party, not acting in a rep-

resentative capacity, invokes a limitation created by statute and which will operate in his favor, if invoked, is a privilege which he may or may not exercise, as he chooses. He is not under any obligation to the state or towards third persons to plead it. It does not extinguish a debtor's obligation. Unless relied on or pleaded, it neither extinguishes an obligation nor prolongs or shortens the time for asserting a right.

It was said in State Trust Co. v. Sheldon. supra:

"Statutory provisions designed for the benefit of individuals may be waived, but, where the enactment is to secure general objects of policy or morals, no consent will render a noncompliance with the statute effectual. The statute limiting the time within which action shall be brought is for the benefit and repose of individuals, and not to secure general objects of policy or morals. Its protection may therefore be waived, in legal form, by those who are entitled to it; and such waiver, when acted upon, becomes an 'estoppel to plead the statute."

But the limitation provided by statute within which an action may be brought for relief on the ground of fraud is modified and controlled by the general insurance law of the state, adopted by the Legislature in 1909, in so far as it affects life insurance policies issued or delivered in the state. Section 3470, Revised Laws 1910, reads:

"No policy of life insurance shall be issued or delivered in this state, or be issued by a life insurance company organized under the laws of this state, unless the same shall at least provide in substance the following: * * * Third. That the policy, together with the application therefor, a copy of which application shall be endorsed upon or attached to the policy and made a part thereof, shall constitute the entire contract between the parties and shall be incontestable after two years from its date, except for nonpayment of premiums and except all violations of the conditions of the policy relating to naval or military service in time of war. Provided that the application therefor need not be attached to any policy containing a clause making the policy incontestable from date of issue."

This statute makes no reference to fraud in the procurement of the policy, or to the time of the discovery of the fraud. Its evident purpose and its effect is that every policy of life insurance issued or delivered in the state shall provide that it shall be incontestable after two years from its date, at the most. The words used in the statute, "unless the same shall at least provide in substance * * * that the policy shall be incontestable after two years from its date,"

admit of no other construction. The words "shall at least provide," when read with the context, show that the evident legislative intent was to make the maximum limit of time within which a policy might be contestable two years, leaving it for the parties to the insurance contract to fix a lesser time, if they so agreed. And the same paragraph of the section, in its proviso, makes it unnecessary to attach to the policy the application therefor where it contains a clause making the policy incontestable from date of issue.

This construction is borne out by the section immediately following the one under discussion. Section 3471, Revised Laws 1910, reads:

"No policy of life insurance shall be issued or delivered in this state * * * if it contains any of the following provisions:

"First. A provision limiting the time within which any action at law or in equity may be commenced to less than three years after the cause of action shall accrue. * * *

"Third. In the event of the maturity of any policy after the expiration of the contestable period thereof, a provision for any mode of settlement, after maturity, of less value, according to the company's published rates therefor, than the amount insured on the face of the policy", etc.

As authority for this construction of the meaning of the words "at least," when read with the context, see Courson v. Parker, 39 W. Va. 521, 20 S. E. 583; Hernandez v. His Creditors, 57 Cal. 333, 334; Warren Mfg. Co. v. Hoffman, 62 Md. 165-170.

The limitation as to action for relief on account of fraud being thus modified by statute especially applicable to life insurance contracts, it was competent for the insurance company and the insured to stipulate in the policy declared on in this case that it should be incontestable after one year from the date of its issue, etc. And such a stipulation did not in any manner limit the time in which the insurance company might, under the contract and by the usual proceedings in the ordinary tribunals, enforce its rights.

We are inclined, also, to agree with the views of the Supreme Court of Kentucky, in the case of Citizens Life Ins. Co. v. McClure, supra, when, in construing a similar stipulation, the court said:

"The question of limitation has no proper place. * * * Indeed statutes of limitations apply to actions, and not defenses; so discussion of the statute of limitations in this case would therefore be irrelevant. It is not claimed by appellee that appellant's defense

is barred by limitation. The sole question is: Does the stipulation of the policy in question preclude appellant from making the defense set up in the answer? The fact that the effect of holding the policy incontestable would be to exclude a defense that would be good if the policy were not incontestable is beside the question. It is the incontestability of the policy. and not the limitation, that bars the defense. The parties to the contract of insurance in making it incontestable as in the policy provided, did not substitute a shorter period of limitation for that provided by statute. The stipulation has no reference to limitation, but to a waiver by the insurer of the right of defense on the ground of fraud that may have been practiced by the insured in obtaining the policy. in consideration of the latter's making payment of premiums as required by the policy; the time for the policy to become incontestable being fixed as of the payment of the second premiums, to give the insurer time to satisfy itself that no fraud was committed by the insured. If, within that time, discovery of the fraud is made, the policy may be canceled by the insurer, without suit, under another provision of the policy; but if no fraud is discovered, or, if discovered, the policy is not canceled before the payment of the second premium, and the insured dies after the policy becomes incontestable. defense cannot be made by the insurer, to an action on the policy, on the ground that it was procured by fraud on the part of the insured. The provision as to incontestability seems to be a most reasonable one. It is fair both to the insurer and insured, for it is calculated to make the former diligent in investigating the truth or falsity of the statements made in the application for the policy, and affords time for the investigation; while to the latter it furnishes an incentive to promptness in paying the second and all subsequent premiums, and gives assurance that in his incontestable policy he has a safe investment by which those dependent upon him may be benefited after his death. There is nothing in such a stipulation hurtful to the rights of the parties, or contrary to public policy."

The judgment of the trial court is affirmed.

All the Justices concur.