CASE 59—INDICTMENT—DECEMBER 7.

## Rooney v. Commonwealth.

APPEAL FROM LAUREL CIRCUIT COURT.

1. CRIMINAL LAW—INDICTMENT—DISTURBING RAILROAD FIXTURES.— An indictment under the provisions of section 807 of the Kentucky Statutes, making it an offense to break or disturb any rail or other fixtures attached to the track or switch of any railroad in operation, does not have to contain an allegation that

the railroad company was a corporation and authorized to do business in this State.

2. EVIDENCE.—The admission of evidence as to the rules of the railroad company with reference to such fixtures was not prejudicial or erroneous, as there was sufficient evidence independent of that to authorize the verdict.

H. C. EVERSOLE FOR APPELLANT.

1. The demurrer to the indictment should have been sustained because of its failure to allege that the Louisville & Nashville Railroad Company was a corporation, and had authority to operate in this State.

2. The evidence of the witness, Johnson, with reference to the printed rules of the company, which were not produced on the trial, was certainly incompetent. Greenleaf on Evidence, vol. 1, secs. 8 to 13.

W. S. TAYLOR FOR APPELLEE.

1. The indictment follows the language of the statute, and is good without further description of the offense. 88 Ky., 350; 13 Bush, 318; 14 Bush, 233; 1st Wharton's Criminal Law, 364.

2. It is not necessary under the statute defining the offense that the act should be such that the engine and cars of the railroad should actually be put in danger by the removal of the fixture, but only that such things might have been brought about by such removal.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

The appellant was indicted, tried and convicted under the following indictment: "The grand jury of Laurel county, in the name and by the authority of the Commonwealth of Kentucky, accuse John Rooney of the crime of willfully and maliciously tearing up, displacing, breaking and disturbing a fixture attached to the track and switch of a railroad in operation, whereby the engine and cars on said railroad might be upset, arrested and thrown from the track and switch of said road, committed in manner and form as follows, viz.: The said John Rooney did, on the 4th day of October, 1897, and before the finding of this indictment

Rooney v. Commonwealth.

in the county aforesaid, unlawfully, willfully and maliciously
tear up, displace, break and disturb a fixture attached to
the tracks and switches of the Louisville & Nashville Rail-
road Company's railroad, a railroad then in operation, viz., a
switch light, by striking and hitting said switch light with a
coupling pin, bars and pieces of iron and other hard sub-
stances, whereby the engine and cars on said railroad and
switch thereof might be upset and thrown from said track and
switch, against the peace and dignity of the Commonwealth
of Kentucky.            (Signed)      W. R. RAMSEY,

"Commonwealth's Attorney 27th Judicial District of Ken-
tucky.

(Endorsed) "A true bill.

"S. W. BROCK, Foreman."

The indictment was found under section 807, Kentucky
Statutes, which reads as follows: "Any person who shall
willfully and maliciously tear up, displace, break or disturb
any rail or other fixture attached to the track or switch of
any railroad in operation, or break any bridge or viaduct of
such road, or do any act whereby any engine or car might
be upset, arrested or thrown from the track of such road or
switch, or any branch or turn out, shall be confined in the
penitentiary not less than one nor more than five years."

The defendant filed grounds for new trial, which are as
follows:

1st. Because the court failed to properly instruct the jury
as to the law of the case, and refused to instruct the jury
as to the law of the case.

2d. Because the court permitted illegal and incompetent

testimony to go to the jury against defendant over his objections.

3d. Because the verdict of the jury is contrary to law and evidence.

4th. Because the court permitted the testimony of one Johnson to go to the jury as to the printed rules of the Louisville & Nashville Railroad Company, as to the operation of its trains, and the probable result of removing a switch light, over the objections of defendant.

5th. Because he has discovered important testimony in his defense since the trial that he did not and could not by reasonable diligence have discovered before the trial.

It is insisted for appellant that the indictment is insufficient, and the demurrer thereto ought to have been sustained, and also earnestly contends that there is no evidence to authorize the verdict of the jury. It will be seen that the injury to the road consisted in knocking off one of the lamps or lights fastened to or belonging to one of the switches of the Louisville & Nashville Railroad Company. The destruction of the switch light is conclusively proven, and it is also proven by the Commonwealth's own witnesses that trains continued to run both ways during that night without being delayed or hindered in consequence of the destruction of the light. It is also proven that the switch was closed at the time of the destruction of the light. The Commonwealth then introduced H. V. Johnson, who testified as follows: "I am a stock agent of the Louisville & Nashville Railroad Company. I reside in the city of Louisville, Ky. I am acquainted with the rules governing the operation of railroad trains and engines. A switch

lamp is used for the purpose of reflecting two colors of light, white and red. The lamp is set on an iron pin that goes into a hole on socket in the bottom of the lamp. When the switch is closed the white light reflects to the track; when the switch is open it reflects a red light. A white light indicates to a train crew that the track is clear; a red light is to indicate to the crew that the train is to run into the switch. The switch is always closed except when opened for a train to enter in from the main track and when closed the lights always reflect white. The switch lamp never reflects a red light to the track until the lock is thrown. This lock can only be opened by the train crew, who carry the keys to unlock it, whose duty it is to relock the switch before they leave it. These lights are kept lighted at night for the purpose of indicating to the crew of passing trains the location of a switch; the engineer stops his train and one of the brakemen goes and unlocks the break and throws the switch, which turns the red lights to the track, and the train crew then pulls in the switch. If this switch lamp is misplaced and the switch dark a passing train could not tell where these switch tracks are; but for the switch lights a train might pass the switch on the main track without knowing it and might run into another train and cause a collision, or it might cause the engineer to stop his train too soon not knowing the exact location of switch, or it might cause the engineer to run his train past the switch before stopping. It is the duty of a train crew, if they find a dark switch, to give notice all along the line of that fact, which might disarrange the running of a train on the track, and cause the trains to stop. I knew John Rooney, the defend-

ant.  He was arrested for this offence in the city of Louis-
ville by Capt. Haager, chief detective of the Louisville de-
tective force, at the house of the defendant's brother-in-
law, a few days after he knocked the switch lamp off.  If
he resisted the arrest I do not know it, or if he locked the
door to resist arrest I do not know it.  I was with the
officer when the arrest was made.  We went to the house
and called for him, and after a little delay he came out.
I saw no weapon that he had.  If he attempted to make his
escape the back way I do not know it.  The fact of his
knocking the lamp off of the switch and putting it out would
not cause the train to run into the switch unless some one
threw the switch, or prevent or obstruct a train on the main
track.  When a switch light is out it indicates danger, and
it is the duty of the train crew to stop the train and go to
the nearest telegraph office and notify the train dispatcher.
The failure to display a signal at a point where there is a
switch light or stationary signal means the same as a red
light, which indicates danger and is a signal to stop.  A
train can not pass it without stopping and ascertaining the
cause."

Cross-examined by defendant—"I am not an engineer, and
never operated or run an engine, nor never fired an engine.
I never had anything to do with operating an engine or train
on a railroad track, but have rode on engines and seen engi-
neers operate them on the road."

Counsel for defendant propounded the following ques-
tion:  "If knocking the lamp off of its place and putting it
out would of itself cause or might cause a train on the main
track to be arrested, upset or thrown from the track unless

some one throwed the lock of the switch, how could the act of the defendant cause any train to be arrested, upset or thrown from the track or in any way injured?"

"I will not answer that question unless you permit me to answer it in my own' way."

Counsel—"The court will determine whether you answer or not."

"It could not of itself, but it might cause a train detained on the main track on account of the switch being dark, and another train to run into it passing on the main track. Trains generally have orders where to switch for other trains to pass.   Engineers do not always know the roads over which they run well enough to know where the switches are located, especially of dark nights.  Headlights do not always reflect light sufficient for the engineer to tell where the switches are."

It seems to us that the indictment is sufficient.  It charges that he did disturb a fixture attached to the tracks and switches of the Louisville & Nashville railroad, a railroad then in operation, and we do not think it was necessary to allege that the Louisville & Nashville railroad was a railroad corporation authorized to do business in the State, and it is also evident that the allegations of the indictment are in strict accord with the section of the statute, supra, providing for the punishment of persons committing any of the offenses denounced.

It is earnestly contended for appellant that the witness, Johnson, was not qualified to testify as to the danger or injury that might result from the destruction of a switch light, and that it was error to allow him to testify as to the

rules of the company in regard to the running of trains. From this testimony, independent of the rules, it is manifest that some interruption to the proper and safe operation of the road might be caused by the displacing or destruction of said light, and that such arresting, delay or obstruction would be the proximate result of the destruction of the switch light aforesaid. It would seem to be reasonable, even in the absence of evidence, that the destruction of the switch light would reasonably tend to imperil the safe and prompt operation of the railroad, and beyond all question the destruction of the light comes within the literal expression used in the statute, to wit: "Fixture attached to the track or switch of any railroad in operation." The evidence, independent of the proof as to the rules, was sufficient to authorize the verdict.

The jury were the judges as to whether the break was willful and malicious, and also of the other facts and from the proof whether the act might result in any of the injuries mentioned in the statute. The public and the railroad companies are vitally interested in the protection of the means of railroad transportation, and it is of the utmost importance that the public as well as the roads, should be as secure as possible from any and all interference which might reasonably obstruct the operation of the road or endanger the lives of passengers. The statute, having this end in view, should be reasonably and fairly enforced, and although one year's imprisonment might seem a severe punishment for the act complained of when no serious harm seems to have resulted therefrom, yet we do not feel authorized to

disturb the verdict, there certainly being some evidence to sustain it, and the court having properly instructed the jury.

Judgment affirmed.