## Burlew v. Fidelity & Casualty Co. of New York et al.

June 17, 1938.

As Extended on Denial of Rehearing Dec. 16, 1938.

THOMAS E. SANDIDGE and WILBUR K. MILLER for appellant.

E. B. ANDERSON and W. FOSTER HAYES for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In 1927, the appellant, who was the owner of a lot in the residential section of Owensboro, Kentucky, entered into a written contract with L. A. Monarch, as contractor, for the construction of a brick residence, servants' quarters, garden wall and garage thereon, for the sum of $34,000 plus the cost of such extras as might be added as the work progressed. By the terms of the contract the contractor agreed to furnish all labor and materials and to completely construct the buildings, including plumbing, hot water heating and electric wiring, according to plans and specifications prepared by an architect, and which plans and specifications were incorporated in and made a part of the contract.

The appellee, the Fidelity and Casualty Company of New York, in consideration of a premium paid to it by appellant, executed and delivered to appellant its bond for the principal amount of the contract price for the faithful performance of the contract and the completion of said buildings in accordance therewith, which bond was incorporated in and made a part of the contract. The work was completed and the buildings were turned over to appellant in 1928, and he then finished paying the total sum of $35,452.29, therefor.

According to the contention of appellant, soon after

134

tne buildings were completed certain defects began to develop in the buildings, and upon examination by men skilled in such matters it was discovered that the contractor had omitted many material parts called for in the specifications; that in many instances the contractor had substituted an inferior and cheaper grade of material than specified in the contract; that much of the construction had been done in an unworkmanlike manner, and as a result the whole building was seriously impaired.

Upon discovering the defective condition of the buildings the appellant, as required by the bond, notified the appellee company and requested it to remedy the defects and complete the buildings in accordance with the specifications or to satisfy the damages sustained. Certain representatives of appellee company held various conferences with appellant about the building and advised him that the company desired to effect a settlement and would satisfy the damages. Many examinations of the building were made from time to time by different contractors and representatives of the appellee company for the purpose of ascertaining the manner and cost of remedying such defects or the extent of the damages sustained, and as a result of these negotiations appellee offered to pay an amount in damages which appellant considered insufficient and declined the offer. The controversy was then referred to the architect, who was designated as an arbitrator, for a decision as to the manner and extent of repairing the building, and the damages sustained. The arbitrator found that the buildings had not been constructed in substantial compliance with the specifications and as result they were in a weakened and defective condition. The arbitrator prepared a written statement in which he reported that in order to remedy the situation it would be necessary to remove practically the whole interior of the buildings and reconstruct same with the class of materials and in the manner specified, the cost of which would amount to $23,347. Appellee declined to abide by the findings of the arbitrator and declined to remedy the defects or to pay the damages estimated.

In August, 1930, appellant instituted his action in the United States Court for the Western District of Kentucky at Owensboro, to recover the damages which he had suffered by the breach of the building contract.

In its answer to the petition appellee aenied the allegations of same and pleaded affirmatively, among other things, non-compliance with the condition of the bond, which provided that any legal proceeding for recovery under the bond must be brought within twelve months from the discovery of the defects or other matters about which complaint is made; and alleged that plaintiff's suit had not been instituted within said one-year period. By amended petition and reply appellant pleaded that after giving appellee notice of the defective conditions discovered in the buildings, its representatives conferred with him and advised him that it desired to effect a settlement without litigation; that it intended to make an adjustment of his losses and made numerous examinations of the buildings for that purpose and eventually made an offer of settlement, which was declined, and by its acts and conduct it had induced him to delay filing the suit within the one-year period provided in the bond, and therefore had waived said limitation provision in the bond, and appellee is now estopped to raise the question of limitation.

The case was tried at the May term, 1931, and after the evidence of both parties had been presented the court took the case under consideration on certain matters involved, and thereafter further evidence was introduced by both parties at Louisville, in December, 1931.

In February, 1932, the court rendered an opinion and judgment in the case holding that there was not sufficient evidence to support the plea of appellant that the one-year limitation provision in the bond had been waived by the surety company and in view of that conclusion it was unnecessary for the court to consider the other questions presented by the pleadings and evidence, and dismissed appellant's petition.

In the Court's Memorandum Opinion, speaking of the limitation clause in the bond, it is said:

"The validity of such a limitation clause as the one involved here is no longer open to question in Federal Courts, where there is no State statute prohibiting such limitation provisions. Riddlesbarger v. Hartford F. Insurance Company, 7 Wall. 386, 19 L. Ed. 257; Reynolds v. Detroit Fidelity & Surety Co., 6 Cir., 19 F. (2d) 110 and cases there cited. Kentucky has no statutory provision prohib-

iting such a limitation agreement, nor am I advised of any such statutory provision in the State of New York, if it be considered that the bond was issued in that State. Therefore, the limitation provision in the bond in suit must be accepted as valid and binding upon the parties, unless the evidence shows that the defendant has been guilty of such conduct as to have led the plaintiff, in the exercise of a reasonable judgment, to believe that defendant did not intend to insist upon the limitation provision; or that the defendant held out to the plaintiff such reasonable hope that the claim would be adjusted and settled without suit as to induce plaintiff to delay bringing suit within the limitation period. The burden is upon the plaintiff in this respect.

"After a careful study of the evidence and all the correspondence passing between defendant and plaintiff and plaintiff's counsel, I am unable to find any substantial evidence supporting plaintiff's claim of estoppel. This conclusion makes it unnecessary to consider the other matters presented by the pleadings and the evidence.

"The petition will be dismissed at plaintiff's cost."

The judgment rendered pursuant to the opinion is as follows:

"This cause having been submitted to the court for final decree, and the court being fully advised, and for the reasons stated in the memorandum opinion this day filed—

"It is ordered that plaintiff take nothing by his petition; that same be dismissed, and that the defendant recover of the plaintiff its costs in this behalf expended. To all of which the plaintiff excepts."

It is to be noticed from the opinion and judgment of the court that the case was not disposed of upon any preliminary or interlocutory question, but was submitted for final decree and determined upon the issue as to whether or not appellant could recover upon his contract.

Appellant appealed from that judgment to the United States Circuit Court of Appeals for the Sixth

Circuit, 64 F (2d) 976, and that court affirmed the judg-
ment of the district court. Appellant then applied to the
United States Supreme Court for a writ of certiorari,
which application was denied in November, 1933 (290 U.
S. 686, 54 S. Ct. 122, 78 L. Ed. 591), thus ending the liti-
gation in the Federal courts.

Thereupon appellant instituted this present action
in the Daviess circuit court against the contractor, and
appellee as surety on the bond, to recover the damages
which he had sustained. The petition sets out the same
cause of action which was litigated in the Federal court.
Appellee filed its answer to the petition, pleading the
same defenses it pleaded in the Federal court litigation,
and further interposed a plea of res judicata, based
upon the former litigation had in the Federal courts,
which plea the circuit court sustained, and, appellant
failing to plead further, the court dismissed his petition.
Hence this appeal.

The sole question involved in this appeal is whether
or not the Federal court judgment is res judicata. Ap-
pellant insists that that judgment was not res judicata
because it was not on the merits of the case, but on the
limitation provision of the contract only, and insists
that the limitation question did not involve the substan-
tive rights of the parties. He states his position thus:

"Whether the contractor had or had not com-
plied with the specifications in constructing the
buildings involved the substantive rights of the par-
ties and constituted the merits of the action."

We do not think that the merits of the action is re-
stricted to the narrow sense or point contended for by
appellant. Plaintiff asserted his right to recover on the
alleged breach of contract and appellee denied that right
upon the ground that appellant had not complied with
the limitation provision of the bond which was a part
of the contract. The limitation provision in the bond
was an issue germane to the appellant's right to re-
cover, and undoubtedly involves the merits of the action.

To sustain his position, appellant relies upon vari-
ous authorities cited in his brief, among which is the
case of Hughes v. United States, 4 Wall. 232, 71 U. S.
232, 18 L. Ed. 303, wherein the court said (page 237):

"In order that a judgment may constitute a
bar to another suit, it must be rendered in a pro-

ceeding between the same parties or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits. If the first suit was dismissed for defect of pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit.''

But, for the reason stated above the facts of the present case do not come within the principle announced in the Hughes Case, supra, because, as we have already stated, the issue upon which the present case was determined by the Federal court goes to the merits of the action, not to the defect of pleadings or parties or any misconception of the form or proceeding or want of jurisdiction. Appellant cites and quotes from various other authorities like or similar to the Hughes Case, supra, bottomed upon the same reason, but the distinction we have pointed out in the Hughes Case is applicable to those cases.

It is the further contention of appellant that the Federal court judgment was not res judicata or a bar to the present proceeding in the state court, because the two actions were in different forums, and he relies upon the rule that in such cases the lex fori is controlling. There is cited in support of this contention Labatt v. Smith & Whitney, 4 Ky. Law Rep. 357, 422; Oliver v. Crewdson's Adm'r, 256 Ky. 797, 77 S. W. (2d) 20; 13 C. J. Page 260, and quotes from the C. J. Citation as follows: ''The validity of a contract limiting the time for bringing action is governed by the law of the forum.'' Many other authorities of a like nature are cited, but to make them applicable to the present case appellant assumes that a limitation provision, such as that involved in the present case, affects the remedy and not the merits of the action. If the remedy only was affected in this case a different question might be presented; but, since we have concluded that the Federal court judgment was based on the merits of the action, it follows that the authorities relied on by appellant are not applicable.

In Wallace v. Wallace, 189 Ky. 451, 225 S. W. 31, it is held that, when a party selects a forum that has jurisdiction of the parties and the subject matter of the action, he is concluded by the judgment rendered in that

forum, and cannot open it up or relitigate it in another or concurrent jurisdiction.

Also in Fulton Iron Works v. Riggin, 14 Mo. App. 321, the plaintiff had previously sued on the same cause of action in the State of Colorado and his action there had been dismissed and judgment rendered for the defendant upon the sole ground that it was barred by the statute of limitations. He then brought the same action in the Missouri Court and it was held that he was concluded by the former judgment. The court said:

> "Plaintiff selected his forum. There was a final judgment against him. He might, after the demurrer, have dismissed his action; but he elected, with his eyes open, to allow judgment to go against him on the merits, that is, on the question whether or not he had a subsisting cause of action against defendant on this note."

In the Federal court proceeding had in the present case plaintiff did not as much as question the validity of the limitation provision in the bond but assumed or admitted its validity by pleading in avoidance, and elected to stand on that plea and suffered a final judgment to be rendered on that issue.

In U. S. v. Oregon Lumber Company, 260 U. S. 290, 43 S. Ct. 100, 67 L. Ed. 261, it appears that the United States Government brought a suit in equity to set aside the patents for certain lands and the suit was dismissed because of laches or limitations. Later the United States brought another action at law to recover damages for the fraudulent acquisition of the lands and the judgment dismissing the equity suit was pleaded in bar. The direct question involved in that action was the election of remedies, but the principle to be deduced from that opinion is, by analogy, applicable to the present case. We here quote from that opinion the part applicable to the present case (page 103):

> "The distinguishing feature of the instant case is that, after the coming in of the answer pleading the statute of limitations, and the plain warning thus conveyed of the danger of continuing the equity suit further, the plaintiff in error persisted in pursuing it to final judgment, instead of promptly reforming the cause or dismissing the bill and seeking the alternative remedy, not subject to the same

defense. The doctrine of election of remedies and that of res adjudicata are not the same, but they have this in common: That each has for its underlying basis the maxim which forbids that one shall be twice vexed for one and the same cause. The policy embodied in this maxim we think requires us to hold that the plaintiff in error, in bringing the original suit, and in continuing after the plea in bar to follow it to a final determination, made an irrevocable election, and that it is now estopped from maintaining the present inconsistent action.''

See, also, 34 C. J. pages 944 and 1161, and cases cited in notes thereunder.

In the case of Cain v. Union Cent. Life Insurance Company, 123 Ky. 59, 93 S. W. 622, 29 Ky. Law Rep. 475, 124 Am. St. Rep. 313, suit was filed by the insured to recover on an insurance policy and the insurance company pleaded the contract limitation of one year contained in the policy in bar of the action. The insured filed her reply to which the court sustained a demurrer and judgment was entered dismissing the action, based upon the limitation plea. From that judgment she appealed to this court where the judgment was affirmed. Later another action was filed on the same policy and it was held that the former judgment entered upon the limitation clause of the policy was a decision upon the merits of the case concluding the right of any further action.

In the case of Perry Mercantile Company v. Miller, 233 Ky. 148, 25 S. W. (2d) 35, wherein the question of res judicata was involved, the court said (page 36):

"In the case of Turner v. Deaton, 220 Ky. 154, 294 S. W. 1063, we had occasion to examine into the rule of res adjudicata, and we there said that this rule means that, where a question or a fact is once litigated and determined by the judgment of a court of competent jurisdiction, no fact or question that was thus litigated or could have been litigated can thereafter be relitigated by the same parties or their privies.''

In Buck Creek Railway Company v. Copley's Adm'r, 253 Ky. 211, 69 S. W. (2d) 337, the matter in controversy was first litigated in the district court of the United States and later the same action was brought in

the Martin circuit court to which latter action the judgment of the Federal court was pleaded in bar. In holding the judgment of the Federal court operated as a bar to the new action in the state court on the same claim or cause of action, the court said:

"The judgment of a federal court on the merits of a case operates as a bar to a new action in the state courts on the same claim or cause of action. Freeman on Judgments, sec. 1473; Reed v. Whitlow, 43 S. W. 689, 19 Ky. Law Rep. 1538; McCabe's Adm'x v. Maysville & Big Sandy Railroad Company, 136 Ky. 674, 124 S. W. 892; Clinger's Adm'x v. C. & O. Railway Co., 138 Ky. 615, 128 S. W. 1055. The issues having been litigated and adjudicated in a court of competent jurisdiction, they cannot be relitigated by the same parties or their privies. Hopkins v. Jones, 193 Ky. 281, 235 S. W. 754. The trial court, therefore, should have sustained the plea."

Many other authorities might be cited supporting our conclusion that the Federal court judgment was res judicata, but we do not think it necessary to further extend this opinion by further citation of authorities.

It is the policy of the law and the established rule in this and all other jurisdictions, as far as we know, that litigation must end somewhere and as speedily as practicable. Appellant voluntarily chose the Federal court as the forum in which to litigate his cause and that court having had jurisdiction of the parties and the subject matter and the cause having been prosecuted to final judgment upon its merits, it follows that that judgment is conclusive of the question involved as between the same parties or their privies, and the same subject matter.

The crux of appellant's case, after all, rests in the assumption that the state courts will consider themselves to be bound by the decision in Union Central Life Ins. Co. v. Spinks, 119 Ky. 261, 83 S. W. 615, 84 S. W. 1160, 26 Ky. Law Rep. 1205, 27 Ky. Law Rep. 325, 69 L. R. A. 264, 7 Ann. Cas. 913, for, if they should not, then the contract limitation *shortening* the statutory period, but still allowing a reasonable time within which to bring suit, would preclude recovery in the state courts just as it did in the federal courts. In view of our con-

clusion in regard to the plea of res adjudicata it is not necessary to do more than say that confidence in the efficacy of the Spinks opinion may be misplaced.

The Spinks Case expressly relied upon the opinion in Wright v. Gardner, 98 Ky. 454, 33 S. W. 622, 35 S. W. 1116, 17 Ky. Law Rep. 1345, wherein this Court held invalid a contract which undertook to *lengthen* the time prescribed by statute. The most casual thought will immediately disclose the vast difference between the two situations. It is in the public interest, as pointed out in Wright v. Gardner, that the courts be not cluttered up with stale claims. It is entirely proper that the courts enforce this public policy to the extent of refusing to enforce a contract limitation which fixes a *longer* period than that prescribed by statute. This policy, however, was declared in the Spinks Case to be against *any* change in the statutory period, whether to lengthen it or to shorten it.

Plainly, the philosophy of the public policy recognized in Wright v. Gardner, supra, is the very antithesis of the rule as it was applied in the Spinks opinion. Indeed, in at least two previous opinions this Court had properly sustained limitations fixed by contract shorter than the statutory period. Smith v. Herd, 110 Ky. 56, 60 S. W. 841, 1121, 22 Ky. Law Rep. 1596; Kentucky Mutual Security Fund Co. v. Turner, 89 Ky. 665, 13 S. W. 104, 11 Ky. Law Rep. 793.

Undoubtedly the conclusion in the Spinks Case was influenced by the unconscionable practice, in certain insurance policies particularly, of naming a contract limitation of so short a time as practically to preclude a suit. The ethics of the situation—or rather, the lack of ethics—presented in those cases became, not unnaturally, confused with the positive rule of law concerning the changing of the statutory period to a *longer* time and the pronouncement followed, that *any* change of the limitation period fixed by statute was contrary to public policy and void. Obviously, the shortening of the statutory period—provided always that the period is not unreasonably short—is in the public interest and not against it. So long as the parties are dealing at arm's length we see no reason why the rule as consistently applied in the federal courts should not be accepted as the proper one. If the period fixed is a reasonable one it

will be enforced. Union Central Life Ins. Co. v. Spinks, supra, is, to this extent, overruled.

The decision of the Supreme Court of the United States in Erie Railroad Co., v. Tompkins, 304 U. S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, 114 A. L. R. 1487, has placed upon each of the State courts the added responsibility at this time of a careful re-examination and reappraisement of the rules of the common law as applied in its jurisdiction to determine wherein its own pronouncements may have been erroneous or against the weight of authority. Where upon such reappraisement we find, as here, that our own rule will not stand the test of careful analysis we will not hesitate to adopt another.

From what has been said, it follows that the judgment must be, and it is, affirmed.

Judgment affirmed.

Whole Court sitting.

Thomas, J., dissents.