HARTFORD FIRE INSURANCE COMPANY, Appellant,

v.

Ohoma MOORE et al., Appellees.

Court of Appeals of Kentucky.

March 17, 1967.

Earle M. Nichols, Nichols & Nichols, Madisonville, for appellant.

Carroll Morrow, Moore, Morrow & Frymire, Madisonville, for appellees.

DAVIS, Commissioner.

The factual situation presented in this appeal is a novel one involving various rights under a fire insurance policy. In substance, the judgment of the trial court was adverse to the appellant, Hartford Fire Insurance Company, and by this appeal that company seeks a reversal of the judgment. A statement of the underlying facts is necessary to clarify the questions presented here.

Jewell Moore and Ohoma Moore, his wife, jointly owned a residence at Mortons Gap. On July 13, 1963, a fire insurance policy in the amount of $3,000 was issued by the appellant company, covering fire and other hazards respecting the property. The policy was a renewal of a policy obtained in 1959 through the vice president of Planters Bank, serving also as an insurance agent, incident to a mortgage loan of $2,000 made by that bank to the Moores. A standard mortgage clause in favor of the bank was made part of the policy.

A second mortgage loan was obtained by the Moores from Peoples Bank & Trust Company, Madisonville, and the latter bank was also designated as a payee under the mortgage clause in the insurance policy.

It appears that the amount of the loan by the Peoples Bank to the Moores was originally in the sum of $1,516.53.

On April 17, 1964, a fire of undetermined origin virtually consumed the residence of the Moores. At that time Mr. and Mrs. Moore had separated, and by the time the present suit came to trial they had been divorced.

On the Saturday after the fire Jewell Moore advised his banker-insurance agent at the Planters Bank that the loss had occurred. Mr. Pendley, the banker-insurance agent, informed Moore that he would relay the information to the appellant company, which he did. Shortly thereafter the company referred the loss to the General Adjustment Bureau at Madisonville; Roger Davis, an employee of that bureau, undertook the investigation of the loss.

Davis went to the fire scene, but was not successful in locating Jewell Moore. However, Moore obtained the word that Davis desired to see him about the fire and called upon Davis in his Madisonville office. Davis obtained from Moore a non-waiver agreement, preserving the company's policy rights while permitting its investigation of the fire. Davis requested Moore to furnish an appraisal of the loss, which Moore did furnish to Davis in a few days. Moore testified that he was then informed by Davis that nothing more was required, and that if he needed him for anything more he would let him know. Davis denied this.

Meanwhile, the domestic difficulties between Mr. and Mrs. Moore seem to have worsened, and in the settlement of their affairs Moore conveyed to her his undivided interest in the fire-damaged property. Mrs. Moore communicated with Davis on at least three occasions; she testified that she was pressing him for a settlement, but he denied that she did, although he admitted that she did call upon him asking about the status of the claim.

On December 15, 1964, the Planters Bank executed and delivered to Davis a sworn

statement in proof of loss under the policy. Davis had prepared this proof of loss for the bank. Incident to that, the company paid Planters Bank $2,021.66, the exact sum due on the mortgage note of the Moores. The bank executed an assignment to the insurance company of all its rights in the note and mortgage.

Three days later Davis went through the same routine with Peoples Bank, by receiving from it a proof of loss which he had prepared, paying the bank $978.34 (balance of the policy's $3,000 coverage), and taking an assignment, pro tanto, of that bank's interest in the mortgage note of the Moores.

On April 22, 1965, the Moores instituted this suit, seeking to recover in behalf of Mrs. Moore the $3,000 claimed under the policy; the banks were named as defendants and called upon to assert their claims.

The insurance company defended on two basic grounds; (1) the Moores had failed to file a sworn statement of proof of loss within 60 days, and (2) the suit had not been filed within 12 months next after inception of the loss. The insurance company asserted a counterclaim against the Moores, seeking recovery of the sums paid by it to the banks, and enforcement of the mortgage liens.

The trial court submitted the issues to a jury, which returned a two-way verdict, by awarding recovery to the Moores for $3,000 on the policy, and awarding the insurance company $3,000 for the sums it had advanced to the banks. Except for a slight differential as to interest on the respective claims, the trial could be characterized as a "dog-fall."

We think we can cut through the maze of legal arguments presented in the briefs. As we view it, it is not necessary to decide whether the suit was too late. In our view, the parties went to trial on the idea that the Moores had done all that was required of them by the policy, or, if not, that the company had effectively waived any noncompliance. The trial court permitted an amended complaint asserting waiver by the company's actions; this amendment was filed after the proof was in, and purportedly to conform to the proof. Appellant complains that the pleading was not served, but that question was not preserved for appellate review, nor would it have been a valid point anyway in the circumstances at bar.

■ CR 15.02 specifically permits the type of amendment which was made in the trial court. Significantly the cited rule also provides that even the failure to so amend " * * * does not affect the result of the trial of these issues."

It is observed that the policy of insurance provides, in part:

"If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. *If this Company shall claim that no liability existed as to the mortgagor or owner,* it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage." (Emphasis added.)

It is significant that the appellant company has never asserted that it claimed "that no liability existed as to the mortgagor or owner" at the time it accepted the proofs of loss from the banks and paid to them a sum equal to the proceeds of the policy. It must be recalled that the insurance company paid the money to the banks just less than eight months after the fire—certainly within twelve months after the inception of the loss by any construction. What then remained for the Moores to do? So far as they were then concerned, the insurance had been paid, so there was no purpose in their filing proof of loss. It seems obvious that what the Moores really sought

in this action was to have the liens of the mortgages cleared from the title records. Their obligations to the banks had been credited, but the liens had not been released. They took the precaution of naming the banks as parties in the action, because it was obvious that any *insurance* proceeds would inure to the banks under the mortgage clause of the policy; on the other hand, if the insurance company was taking the position that it had merely bought the paper from the banks, then the Moores wanted credit to the extent of the insurance as a set off against the company.

 As recently as Fidelity & Guaranty Ins. Underwriters, Inc. v. Gregory, Ky., 387 S.W.2d 287, this court had occasion to deal with the legal effect of the conduct of an adjuster (from the same bureau) as working an estoppel against the company's insistence upon policy provisions respecting proof of loss. The rationale of that decision is controlling here. It seems abundantly plain that the actions of the appellant company "would naturally induce delay or lead an ordinarily prudent person to believe that the requirement of the policy respecting proof was waived." See Dunning v. Continental Ins. Co., 254 Ky. 368, 71 S.W.2d 995, 998, quoted with approval in the Gregory opinion. Moreover, by parity of reasoning, it is equally clear that an ordinarily prudent person would believe that the insurance company had "paid" the claim when it paid the exact amount of the policy to the banks. This is particularly so in face of the policy provision warranting subrogation in such instances if, but only if the company "shall claim that no liability existed as to the mortgagor or owner."

Our cases have recognized the validity of policy provisions imposing limitation periods shorter than provided by statute. Burlew v. Fidelity & Casualty Co. of New York, 276 Ky. 132, 122 S.W.2d 990, 121 A.L.R. 751. It seems appropriate to observe that the same policy which allows the company to enforce the contract must re-

quire the company to abide by the contract. The company did not bring itself within the policy provisions for payment to the mortgagee banks while preserving its defenses, if any, against the mortgagor. It neglected to disclaim liability to the mortgagors. As observed in Cox v. Howard, Ky., 261 S.W.2d 673, 675: "all they that take the sword shall perish with the sword."

The judgment is affirmed.

All concur.