Stuart COLE, Individually and on behalf of all others similarly situated; Loren Patterson, Individually and on behalf of all others similarly situated; Ronda Keabler, Individually and on behalf of all others similarly situated, Appellants

v.

WARREN COUNTY, Kentucky; Mike Buchanon; Jackie Strode; Jeff Robbins; Pat Watt; Misse Cooperedmonds; Gayle Eston; South Central Bank of Bowling Green, Inc.; Ellen Lee Bale; and Tommy Ross, Appellees

and

South Central Bank of Bowling Green, Inc., Cross–Appellant

v.

Stuart Cole, Individually and on behalf of all others similarly situated; Loren Patterson, Individually and on behalf of all others similarly situated; Ronda Keabler, Individually and on behalf of all others similarly situated, Cross–Appellees

NO. 2014–CA–000778–MR, NO. 2014–CA–000812–MR

Court of Appeals of Kentucky.

RENDERED: NOVEMBER 13, 2015; 10:00 A.M.

Discretionary Review Denied by Supreme Court August 17, 2016

Briefs for Appellants: Gregory A. Belzley, Camille A. Bathurst, Prospect, Kentucky, Gary S. Logsdon, Brownsville, Kentucky.

Briefs for Appellee/Brief Cross–Appellant, South Central Bank of Bowling Green: Mark S. Riddle, Benjamin J. Lewis, Louisville, Kentucky.

Brief for Appellees: Stacey A. Blankenship, Kristen N. Worak, Paducah, Kentucky.

Amicus Curiae Brief for Kentucky Bankers Association: Debra Stamper, John T. McGarvey, M. Thurman Senn, Louisville, Kentucky.

1. Kentucky Revised Statutes.

2. The county's judge-executive, Mike Buchanon, the county jailer, Jackie Strode, and

BEFORE: MAZE, NICKELL, AND VANMETER, JUDGES.

## OPINION

## VANMETER, JUDGE:

Under KRS[1] 441.265, county jails are permitted to confiscate cash and checks belonging to prisoners at booking, deposit and retain those proceeds, and automatically deduct required fees without an order of a sentencing court. We must decide primarily whether the Warren Circuit Court correctly upheld the legality of this procedure. We hold that the trial court correctly found in favor of the jail, but erred in its determination that the bank accepting the deposited checks may be liable for accepting those checks without the consent of the prisoner payees.

Ronda Keabler, Stuart Cole, and Loren Patterson ("appellants"), on behalf of themselves and all others similarly situated, appeal from two Warren Circuit Court orders: one denying their motion to alter, amend or vacate the trial court's January 6, 2014 order addressing motions for summary judgment and class certification, and one denying their motion for leave to file a third amended complaint. The South Central Bank of Bowling Green, Inc. ("Bank") cross-appeals the court's grant of partial summary judgment in favor of appellants. For the following reasons, we affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Appellants, as former prisoners of the Warren County Jail, brought suit against the Bank and Warren County, Kentucky ("Jail")[2], alleging that checks made pay-

Deputy Jailers Jeff Robbins, Pat Watt, Misse Cooper–Edmonds and Gayle Eston were also named defendants. In addition to the Bank itself, the appellants also named Chairwoman

able to them were improperly confiscated and the funds illegally deposited at the Bank and kept by the Jail for costs associated with their confinement. The Jail and Bank's procedure took the following form: money and checks seized or received from detainees were deposited into an inmate account held at the Bank; checks made payable to detainees were stamped "For Deposit Only, Warren County Jail, Inmate Account" and deposited at the Bank; the Bank accepted the unindorsed checks for deposit; and finally, costs of the prisoner's confinement were automatically deducted from the account, while any excess funds could be used by the inmate at the jail commissary.

Appellant Cole was arrested in October 2003, and the Jail confiscated a $33 check made out to him, which was deposited with the Bank and credited to Cole's inmate account. Cole was charged a $20 processing fee, a $20 daily housing fee, and a $5 bond fee, leaving his account with a negative $12 balance. Cole was admitted to the Jail again in March 2009 with two checks made payable to him in his possession, one for $200 and one for $59.55. Cole's account was charged with the prior $12 balance plus a $75 booking fee. At the time of his release, he was owed a $172.70 refund and despite being mailed a check for that amount, he never cashed it.

Appellant Patterson was arrested in September 2011 and the Jail confiscated a check made out to him in the amount of $150. The Jail deducted $100 as a booking fee, and attempted to deposit the check with the Bank. However, Patterson's check was returned due to a stop payment order and money was never deducted from the payor's account. As a result, Patterson was left with a negative balance of $110 in

his inmate account after deduction of a $5 bond fee and a $5 handling fee.

Appellant Keabler alleged that the Jail and Bank illegally deposited the funds from a social security check that was mailed to her while she was incarcerated in 2007. Some of the money from that check went into her inmate account, which she used at the Jail commissary. The Social Security Administration cut off her benefits once it learned of her incarceration.

The appellants filed suit, making three arguments. First, the appellants alleged that the Jail's policy of indorsing, cashing, and retaining proceeds from checks without the payee's knowledge violates Kentucky law. Next, they claimed that the Bank's policy of honoring the checks violates Kentucky law. Third, they argued that the Jail's practice of retaining cash and proceeds from checks, without an order from a sentencing court, was in violation of KRS 441.265. The appellants moved the trial court to certify a class consisting of all persons admitted to the Jail since December 12, 2006. They sought to recover all actual, consequential, and special damages arising from the Jail's and Bank's conduct; specifically, they sought to recover the sums of all checks wrongfully accepted by the Bank and deposited into the Jail's inmate account. They further sought punitive damages and a declaratory judgment permanently ordering the Jail and Bank to cease the allegedly illegal practice.

This case was previously dismissed by the United States District Court for the Western District of Kentucky on May 30, 2012. *Cole v. Warren County*, 2012 WL 1950419 (W.D.Ky.2012). The federal court

___

of the Bank's board, Ellen Lee Bale, and the Bank President, Tommy Ross, as defendants. For clarity, the Warren County defendants

will be referred to collectively as the "Jail" and the Bank defendants will be referred to collectively as the "Bank."

held that the Jail's seizure policy does not violate due process because the inmates are not technically deprived of their property, since, with the exception of fees deducted by the Jail, the funds are always available to them, and because the inmates are informed of the policy as well as the Jail's internal grievance procedures. The court declined to rule on whether the policy violates Kentucky law.

In the present case, both the appellants and the Bank and Jail filed motions for summary judgment. The Warren Circuit Court found that the Jail's policy of confiscating cash and checks without first obtaining authorization by a sentencing court is lawful. Still, the trial court held that both the Jail and the Bank violated the Uniform Commercial Code ("UCC") by negotiating unindorsed checks, and that the Bank was liable to the payees for conversion by paying a check on an unauthorized indorsement of the payee. Consequently, the trial court enjoined the Jail and the Bank from illegally indorsing and illegally depositing such checks. However, the trial court found that the appellants had no judicially recognizable interest in enforcing a claim for damages because they either benefited from the deposited funds or were refunded in the proper amount. Finally, the trial court denied the appellants' motion to certify a class action. Since the appellants were found not to have standing for monetary damages against the Bank, the requirements for a class certification were not met. Further, the trial court found that the appellants' claims were not typical of the claims of the proposed class, the "all persons admitted to the Jail since December 12, 2006" class composition was too broad, and certifying the class would require an individualized inquiry into which persons had unindorsed checks de-

posited, defeating the purpose of a class action.

The appellants filed a motion to alter, amend, or vacate, which the trial court denied. The appellants also filed a motion to amend their initial complaint in an attempt to raise a number of constitutional issues not previously raised. The trial court also denied this motion. From those denials, the appellants seek review. In addition, the Bank cross-appeals the trial court's holding that its policy of honoring checks made payable to inmates and depositing those funds into the Jail's account violates the UCC.

The appellants make four arguments on appeal. First, they claim that the trial court improperly interpreted KRS 441.265 and the Jail should not be permitted to seize cash and checks in the possession of prisoners without an order from a sentencing court. Second, the appellants claim that if the trial court did interpret KRS 441.265 correctly, then the statute is unconstitutional. Third, the appellants argue they are in fact entitled to damages due to the Jail and Bank's violation of the UCC. Lastly, the appellants maintain that a class should have been certified.

In its cross-appeal, the Bank argues that its policy of depositing inmate checks into the Jail's account does not violate the UCC because the Bank had no legal obligation or basis for questioning the Jail's authority to deposit such checks. In the alternative, the Bank claims that injunctive relief was improper since a cause of action for monetary damages is the only relief provided for in the UCC, specifically KRS 355.3–420(2).[3]

## II. STANDARD OF REVIEW.

In general, a trial court has unlimited power to alter, amend, or vacate its judg-

---

**3.** The Kentucky Bankers Association, as *amicus curiae,* has also filed a brief to address the industry-wide check processing issues implicated by this case.

ments. *Gullion v. Gullion*, 163 S.W.3d 888, 891–92 (Ky.2005). A trial court's ruling on a CR [4] 59.05 motion to alter, amend or vacate is reviewed under an abuse of discretion standard. *Bowling v. Kentucky Dep't of Corr.*, 301 S.W.3d 478, 483 (Ky. 2009). "The familiar rule has been that the trial court has a wide discretion as to the filing of amended pleadings and this court will not interfere with a ruling on the subject unless it is clearly apparent the trial judge has abused his discretion." *Shelley v. Hill*, 265 S.W.2d 34, 36 (Ky. 1953).

## III. ISSUES AND ANALYSIS.
### A. KRS 441.265.

▆ First, we will address the trial court's interpretation of KRS 441.265. The appellants allege that the Jail's procedure of confiscating and keeping cash and checks without an order from a sentencing court violates Kentucky law, specifically, KRS 441.265. KRS 441.265(1) states: "[a] prisoner in a county jail shall be required by the sentencing court to reimburse the county for expenses incurred by reason of the prisoner's confinement as set out in this section, except for good cause shown." The trial court found that given the use of the word "reimburse," KRS 441.265(1) provides a method for repayment of fees past due to the Jail, rather than permission for the automatic charging of fees upon incarceration.[5] Further, the trial court acknowledged that qualifying the particular court as "sentencing" implies that Section 1 applies to convicted inmates. Hence, the trial court held that a sentencing court's order is not required when the inmate has the funds to pay the required fees available—such an order is only necessary when the prisoner still owes fees at the time of his sentencing.

We agree with the trial court's interpretation of KRS 441.265. The language of the statute is unambiguous, and seems clearly intended to provide a means for county jails to automatically deduct required fees when the inmate has the funds available. "It is well settled that the interpretation of a statute is a matter of law. Accordingly, a reviewing court is not required to adopt the decisions of the trial court as to a matter of law, but must interpret the statute according to the plain meaning of the act and in accordance with the legislative intent." *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky.2002). In *Plowman*, the Kentucky Supreme Court directed:

[t]his Court has repeatedly held that statutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required. KRS 446.080 provides for a liberal construction of statutes with the view to promote their objects and to carry out the intent

---

4.  Kentucky Rules of Civil Procedure.

5.  The trial court found that Section 2 of KRS 441.265 is the section that provides the Jail with the authority to establish fees upon booking. In fact, the trial court indicated that Section 1 of KRS 441.265 would have been better located after Section 7, making Section 1 only a collection mechanism for the Jail. The trial court stated:
> The confusion results from the inconsistent placement of Section 1 within the statute with its intended purpose. Reading the statute as a whole, this Court finds that the legislature granted the [Jail] the authority to establish, assess, and collect fees. The statute allows for automatic deduction of the prisoner's property i.e.: cash, for required fees. It authorized the jailer to negotiate a reimbursement plan with the prisoner should such fees fail to be satisfied. And then, it requires that the sentencing court assist the [Jail] in collection of past due fees from convicted inmates, unless good cause is shown.

of the legislature. All words and phrases shall be construed according to the common and approved usage of language.

*Id.* (internal citations omitted).

KRS 441.265(6) states:

[p]ayment of any required fees may be automatically deducted from the prisoner's property or canteen account. If the prisoner has no funds in his account, a deduction may be made creating a negative balance. If funds become available or if the prisoner reenters the jail at a later date, the fees may be deducted from the prisoner's property or canteen account[.]

When KRS 441.265(1) is read in conjunction with KRS 441.265(6), we believe the statute unambiguously permits the exact practice used by the Jail. Required fees may automatically be deducted from the prisoners' property or inmate canteen accounts, and if a negative balance is created, KRS 441.265(1) permits a sentencing court to order a prisoner to reimburse the Jail. Thus, we disagree with the appellants' contentions that the trial court wrongly interpreted the statute and that the Jail's practice violates KRS 441.265(1).

**B. CONSTITUTIONALITY OF KRS 441.265.**

■ Next, given our finding that KRS 441.265 permits the Jail's practices, the appellants claim that KRS 441.265 must be unconstitutional. The appellants raised a number of constitutional issues in their motion for leave to file a third amended complaint, which was denied by the trial court. Yet, the only constitutional issue raised in the appellants' brief is the due process issue. Appellants allege, as they did before the trial court, that the trial court's interpretation of KRS 441.265, permitting the Jail to confiscate their checks without an order from the sentencing court, deprives them of their property without due process. They further claim that *res judicata* does not apply with respect to the dismissal of their federal case, that the court's reliance on *Sickles v. Campbell County, Kentucky,* 501 F.3d 726 (6th Cir.2007), was erroneous, and that the federal court opinions cited by the trial court are not controlling.[6]

■ Nonetheless, we must point out that the federal court's decision in this case did in fact bar the trial court from addressing issues already addressed in the federal court's decision. "The judgment of a federal court on the merits of a case operates as a bar to a new action in the state courts on the same claim or cause of action." *Burlew v. Fidelity & Cas. Co.,* 122 S.W.2d 990, 995, 276 Ky. 132, 141 (1938). While the federal court did decline to address the appellants' state law claims in its order dismissing their case, the federal court expressly ruled that the Jail's procedure did not violate due process since the appellants were never actually de-

---

**6.** In their motion for leave to file a third amended complaint, the appellants re-characterized their argument regarding the alleged due process violation to claim that the statute violates Section 10 of the Kentucky Constitution in addition to the Fourth and Fourteenth Amendments to the United States Constitution. The trial court denied the motion, and with respect to this argument, indicated that the appellants could not raise this issue because the issue had already been raised and dismissed in a prior order which the appel-

lants did not appeal. Further, the trial court held that since Section 10 of the Kentucky Constitution provides no greater protection than the federal Fourth Amendment, the appellants' request was inconsequential. *LaFollette v. Commonwealth,* 915 S.W.2d 747, 748 (Ky.1996).

In their brief, the appellants do not appear to reassert any claims of violation of Section 10 of the Kentucky Constitution. Therefore, we will not explore this issue in this opinion.

prived of their property and were provided an adequate post-deprivation remedy. The issue was fully and fairly litigated before a competent court in a final and appealable order. As the appellants did not appeal this order, but rather re-filed the case in state court, we are barred from reconsidering this issue by the federal court's decision.

■ Even if we were not barred from reconsidering the issue of due process, we would not find in favor of the appellants. We agree with the federal court that the appellants were never actually deprived of their property; the funds were deposited into the inmates' account for safe keeping, and with the exception of the Jail legally withdrawing required fees, the appellants had access to those funds while in jail and upon release. Further, each inmate signed an Inmate Rights & Rules and Services Offered to Inmates form, attesting that he or she had received a copy of and understood the rules and regulations of the jail. Those rules include the grievance procedures for inmates wishing to challenge the confiscation of property or the amount of fees withdrawn. Despite the appellants' allegations to the contrary, the grievance procedures were still available to inmates post-release; the appellants simply chose not to avail themselves of those procedures. We agree that this constitutes an adequate post-deprivation remedy. While *Sickles* is not controlling, it presents an almost identical factual situation, and we find the court's analysis and

reasoning in that case highly persuasive. 501 F.3d at 731.

### C. CONVERSION.

In its cross-appeal, the Bank argues that the trial court erred by finding that the Bank committed conversion by honoring the unindorsed checks for deposit and by enjoining the Jail and Bank from continuing their current procedure.[7] KRS 355.3–420(1), in relevant part, defines conversion as follows:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument **or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.**

(emphasis added). The Bank argues that the Jail was, in fact, a person entitled to enforce the instruments/checks deposited with the Bank by reason of its authority to confiscate those checks under KRS 441.265(6), and therefore, the Bank is not liable for conversion.

■ KRS 355.3–301 defines a "[p]erson entitled to enforce" an instrument as follows:

> (1) The holder of the instrument;
>
> (2) A nonholder in possession of the instrument who has the rights of a holder; or
>
> (3) A person not in possession of the instrument who is entitled to enforce the

---

7. The Kentucky Bankers' Association, *amicus curiae,* also filed a brief in this case to address the industry-wide check processing issues implicated by this case. In that brief, the KBA raised the issue of the three-year statute of limitations for conversion actions found in KRS 355.3–118(7). While the Bank also raised this issue in its answer to the appellants' second amended complaint, and in its response to the appellants' motion for class certification, the trial court did not rule on this issue, and the Bank did not raise it in either its prehearing statement or brief before this court. Therefore, we decline to address this issue and will address the conversion claims as timely filed. *See* CR 76.03(8); *Sallee v. Sallee,* 142 S.W.3d 697, 698 (Ky.App. 2004).

instrument pursuant to KRS 355.3–309 or KRS 355.3–418(4). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

The trial court found that the Jail did not qualify as a "holder," which is defined in KRS 355.1–201(u) as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." KRS 355.3–201(2) states:

"[e]xcept for negotiation by a remitter, **if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder.** If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."

(emphasis added). The trial court also cited *Kentucky Title Sav. Bank & Trust Co. v. Dunavan,* 205 Ky. 801, 266 S.W. 667 (1924), a case decided prior to adoption of the UCC, which held that when a bank pays a check on an unauthorized indorsement of the payee, such conduct amounts to conversion, rendering the bank liable to the payee. We agree with the trial court that the only person who can qualify as a holder is the inmate to which the check is made payable.

■ However, the trial court failed to address the Bank's second contention: that KRS 355.3–301(2), entitling "[a] nonholder in possession of the instrument who has the rights of a holder" to enforce an instrument, applies, permitting the Jail to enforce the inmates' checks. The Bank further cites KRS 355.3–301(3), which provides that a "person may be a person entitled to enforce the instrument **even**

**though the person is not the owner of the instrument** or is in wrongful possession of the instrument." (emphasis added). The Official Comment [8] to KRS 355.3–301 explains:

Section 3–301 defines "a person entitled to enforce" the instrument. **The definition recognizes that enforcement is not limited to holders.** The quoted phrase includes a person enforcing a lost or stolen instrument. Section 3–309. It also includes a person in possession of an instrument who is not a holder. A nonholder in possession of an instrument includes a person that acquired rights of a holder by subrogation or under Section 3–203(a). **It also includes** both a remitter that has received an instrument from the issuer but has not yet transferred or negotiated the instrument to any other person **and also any other person who under applicable law is successor to the holder or otherwise acquires the holder's rights.**

(emphasis added). The Bank asserts that the Jail has acquired the holder's rights by reason of KRS 441.265, which permits the automatic deduction of required fees from a prisoner's property, and thus KRS 355.3–301(2) gives the Jail the authority to enforce the unindorsed inmate checks.

We agree with the Bank that the Jail becomes a "nonholder in possession of the instrument who has the rights of a holder" when the Jail lawfully confiscates checks pursuant to KRS 441.265. Since KRS 355.3–301(3) makes such an individual a "person entitled to enforce" an instrument, the Jail is entitled to enforce the confiscated checks. Accordingly, we do not believe the Bank can be liable to the appellants for conversion since it has not made payment

---

8.  KRS 355.1–103(3) directs that Official Comments "represent the express legislative intent of the General Assembly and shall be used as a guide for interpretation of this chapter, except that if the text and the official comments conflict, the text shall control."

with respect to an instrument for a person not entitled to enforce the instrument. In addition, we do not believe the Jail has violated any provision of the UCC since the Jail was entitled to enforce the inmate checks by reason of its authority to confiscate those checks.

The appellants argue in their brief that they are entitled to monetary damages for the Bank's actions. Since we have found that the Bank is not liable to the appellants for honoring their checks deposited by the Jail, we disagree, and thus that part of the trial court's order is affirmed. However, due to that same finding, we must reverse the trial court's order enjoining the Jail and the Bank from indorsing and depositing inmate checks.[9]

## D. CLASS CERTIFICATION.

■ Appellants maintain that the trial court erred by denying their motion to certify a class consisting of "all persons admitted to the Jail since December 12, 2006." We disagree. We agree with the trial court that class certification is inappropriate when the appellants' underlying claims lack legal merit. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998) ("The plaintiffs have no basis for complaining of a refusal to certify a proposed class where the representatives of the class cannot prevail on the merits."). While the trial court reached this conclusion since appellants suffered no monetary loss and thus had no standing to make a claim for monetary damages, given our findings that the Jail and Bank did not violate the UCC, the appellants have no claim whatsoever. Hence, the appellants cannot be representatives of a class owed damages, if such a class exists.

■ We further agree with the trial court that even if the appellants did have standing to bring a claim for monetary damages, they do not meet the requirements for a class action certification. CR 23.01 provides that one or more members of a class may sue or be sued as representative parties on behalf of all only if:

(a) the class is so numerous that joinder of all members is impracticable,

(b) there are questions of law or fact common to the class,

(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(d) the representative parties will fairly and adequately protect the interests of the class.

Here, the appellants cannot meet the third requirement. The appellants have offered no proof that anyone in the proposed class suffered monetary damages. Even if the appellants could prove as much, they would not be appropriate representatives since, as mentioned above, they have not suffered monetary damages. Therefore, the trial court's order refusing to certify a class action is affirmed.

## IV. CONCLUSION.

We affirm the trial court's findings with respect to the interpretation of KRS 441.265, the legality of the Jail's procedure of confiscating checks and automatically deducting required fees, and the constitutionality of KRS 441.265 as interpreted. We reverse the trial court's order enjoining the Jail and the Bank from continuing to indorse and deposit confiscated inmate checks, and reverse the trial court's finding that the Bank is liable for conversion. Finally, we affirm the trial court's order denying the appellants class certification.

---

**9.** For this reason, we will not reach the Bank's alternative argument concerning injunctive relief under the UCC.

Thus, the order of the Warren Circuit Court is affirmed in part, and reversed in part.

ALL CONCUR.